BARHAM, Justice.
 

 On December 20, 1967, Bruce Barksdale filed a petition for writ of habeas corpus in the Criminal District Court for the Parish of Orleans. On February 15, 1968, the district judge overruled the State’s opposition, which was based upon its contention that the petition itself disclosed that Barksdale was not entitled to be set at liberty because all grounds presented in the petition either had been passed upon bn the trial of the merits of the case or were untenable under the law. This court issued a writ of certiorari in the matter on February 20, 1968, at the request of the State.
 

 Bruce Barksdale was indicted on October 3, 1962, by the grand jury of Orleans Parish for aggravated rape, and was tried, found guilty, and sentenced to death. From that conviction and sentence he appealed to this court. State v. Barksdale, 247 La. 198, 170 So.2d 374. This court affirmed, and the United States Supreme Court denied certiorari. Barksdale v. Louisiana, 382 U.S. 921, 86 S.Ct. 297, 15 L.Ed.2d 236.
 
 [1]
 
 In his application for a writ of habeas corpus Barksdale now alleges that he was denied a fair trial, and that his trial and conviction were violative of his constitutional rights guaranteed under Section 1 of the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 2, of the Louisiana Constitution of 1921.
 

 Prior to the adoption of the Louisiana Code of Criminal Procedure in 1966, Louisiana had offered a very limited post-conviction remedy by writ of habeas corpus. The matters reviewable on application for writ of habeas corpus were limited by statute and the jurisprudence of Louisiana. Article 362 of our 1966 Code of Criminal Procedure, in addition to new and specific provisions for post-conviction review by habeas corpus proceedings of the issue of double jeopardy and of a plea under the statute of limitations, provides:
 

 “If the person in custody is being held by virtue of a court order, he shall be discharged if:
 

 “
 
 * * *
 

 “(9) Pie was convicted without due process of law.”
 

 
 *439
 
 Although the comments under this article state the redactors’ intent, it is apparent even without reference to these that the Legislature has created a new and expanded post-conviction remedy in Louisiana.
 

 The history, background, and development of post-conviction relief is helpful in understanding the result intended by the provision. Acting under the authority of Title 28 U.S.C. §§ 2243, 2244, 2254 and under United States Supreme Court pronouncements such as were made in Brown v. Allen, Fay v. Noia, and Townsend v. Sain,
 
 [2]
 
 the federal district courts have exercised what Mr. Justice Frankfurter in Brown v. Allen calls “the superior authority of federal law” by constantly extending the matters which will be reviewed under writ of habeas corpus until, as said by the redactors of our Code, “ * * * the federal power is as broad as the due process concept itself, and it appears that there is no present fixed limitation to that concept indicated by any federal court in recent years”.
 
 [3]
 
 Whether it is wise to follow the federal policy of broadening the application of the writ of habeas corpus in post-conviction review, and whether our doing so will reduce federal intervention and intrusion into state criminal process as claimed by the redactors’ comment, it is certain that Louisiana now has a post-conviction remedy much broader in scope than before. The redactors of the Louisiana Code of Criminal Procedure contend that adequate state habeas corpus relief from lack of due process will reduce federal intervention and “obviate the necessity of federal intrusion”. The questions which our lawmakers faced and the answers to these questions are posed in 29 Albany L.Rev. 335, 340:
 

 “
 
 * * * What a state must decide is whether it will grant this hearing or leave the matter to the federal courts. The latter choice is a partial abdication of control over criminal administration. The former is a submission to federally-conceived procedures for handling federal rights. * * * ”
 

 Our Legislature has at least partially submitted. We cannot believe, however, that this submission was intended to be so complete as to open the floodgate on litigation previously considered contained by final determination and judgment. The deluge of post-conviction applications in federal district courts has contributed to the.greatly expanded need for judges and other court workers in that system. We cannot believe that our Legislature anticipated or intended the same consequences for our system, which is already taxed by the load of litigation, but that this is a
 
 *441
 
 natural consequence of broad post-conviction remedies cannot be denied
 
 [4]
 

 Under federal review of applications for writ of habeas corpus the doctrine of finality of judgments has been almost totally abandoned, and state procedural laws designed to promote and accomplish prompt, orderly, expeditious, and just determination of criminal prosecutions have been disregarded. Mr. Justice Harlan in dissent in Henry v. State of Mississippi, 379 U.S. 443, 464-465, 85 S.Ct. 564, 576, 13 L.Ed. 2d 408, 422 (1965), was of the opinion that state procedures are “ * * * no longer cognizable at all in federal habeas corpus * * * He further stated that “ * * * The States are being invited to voluntarily obliterate all state procedures, however conducive they may be to the orderly conduct of litigation, which might thwart state-court consideration of federal claims”, and he concluded:
 

 “ * * * I venture to say that to all who believe the federal system as we have known it to be a priceless aspect of our Constitutionalism, the spectre implicit in today’s decision will be no less disturbing than what the Court has already done in Fay v. Noia.”
 

 The 1963 United States Supreme Court decisions in Fay v. Noia and Townsend v. Sain, supra, greatly expanded the federal system’s right of intervention and intrusion into state criminal convictions.
 
 [5]
 
 The pronouncements of those cases were further expanded by the adoption of amendments to Title 28 U.S.C. §§ 2244 and 2254 by Congress in 1966.
 
 [6]
 

 
 *443
 
 Although Title 28 U.S.C. § 2254(d) finally. places the burden upon an applicant in the federal courts to establish by convincing evidence that the factual determination by the state court was erroneous if one of the eight exceptions is not met, it is the exceptions which make it possible for one federal judge to superimpose his fact-finding and legal interpretation over every state court proceeding. It is obvious that the creation of the state right does not foreclose later use of the entire federal system and federal intervention. More probably the state remedy will merely procure our state district courts as masters and referees for the compilation of evidence for the federal district courts. Since denial of the writ in state court is not appealable, unsuccessful applicants will simply file new but identical applications in the federal district courts. This will enable federal district courts to exercise stronger and more direct supervision of our state system.
 

 Any attempt by a state to preclude federal intervention by providing its own post-conviction review of federally-based claims will merely establish state court services to be supervised and superintended by the federal district courts. Our state
 
 *445
 
 criminal system will become more subservient to, more interfered with, and more intruded into by the federal system.
 

 Mr. Justice Frankfurter rationalized in his dissenting opinion in Brown v. Allen, supra, that the right of review and reversal of a seven-member state supreme court by one federal district judge does not mean that a lower court is allowed to overrule a higher court, but is simply an expression by Congress of how the superior authority of the federal law should be asserted. He further observed:
 

 “ * * * As Mr. Justice Bradley, with his usual acuteness, commented not long after the passage of that Act [Judiciary Act of 1867], ‘although it may appear unseemly that a prisoner, after conviction in a state court, should be set at liberty by a single judge on habeas corpus, there seems to be no escape from the law.’ Ex parte Bridges (5th Cir.) 2 Woods 428, 432, F.Cas.No.1862. * *”
 

 How much more unseemly it would appear to Mr. Justice Bradley if he could observe the degree to which federal courts and Congress have extended the federal exercise of the writ of habeas over state-convicted prisoners! If the “superior authority of federal law” is to be asserted by one-man federal district courts, our state judicial system should not voluntarily be surrendered to the federal system for our judges to become mere referees, masters, and law clerks in that procedure.
 

 The foregoing remarks are not presented merely for argument or as a condemnation, but are intended to give a view not expressed by the redactors. The remarks will remind us, the lower courts, and perhaps the Legislature of the history and development of this particular remedy, and may be helpful to the courts when interpretation of this article of the Code becomes necessary. We believe any application by this court or other Louisiana courts of this particular remedy to matters before them must be made with knowledge of the circumstances which caused the new remedy to be introduced into our law.
 

 We now pass to a consideration of the merits of the case before us.
 

 Louisiana Code of Criminal Procedure, Article 354, provides:
 

 “The court to which the application is presented shall immediately grant a writ of habeas corpus, unless it appears by the petition itself or by the documents annexed to it that the person in custody is not entitled to be set at liberty. * * ”
 

 Article 354 obviously allows the court to determine from the record presented whether there is a “cause of action”. The State contends in the present case that this court is also obligated to inquire whether the matter to which the petition addresses itself is res judicata, for, in the belief that a judgment should become final at some point, our Legislature and
 
 *447
 
 our courts have uniformly been of the view that issues may be tried only once.
 

 While the United States Supreme Court and other federal courts generally give lip service to a denial of the applicability of the doctrine of res judicata to habeas corpus proceedings, the cases lay down as the test for granting an application a determination of whether the issue presented by the application has been previously heard and rejected, whether the previous hearing was full and on the merits, and whether the successive application is an abuse of the writ. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963); Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924) ; United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Townsend v. Sain, supra; Fay v. Noia, supra; Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924).
 

 In 1966, after our Louisiana Code of Criminal Procedure was adopted, Congress amended Title 28 U.S.C. § 2244 to conform generally to Sanders v. United States, supra, and Title 28 U.S.C. § 2254 to conform to and extend Townsend v. Sain and Fay v. Noia, supra. These sections reject the doctrine of res judicata, but they do recognize as a bar to the granting of the federal writ of habeas corpus (1) prior adjudication of the ground, (2) abuse of the writ by failure to assert the ground earlier, and (3) prior full, fair, and adequate hearing and determination of the factual dispute. We do not need to delineate the precise rules to govern our courts in this regard and in this case, since even under the liberal federal rules the petitioner is not entitled to relitigate some of the issues and grounds stated and since the other grounds urged by petitioner may be determined on the record as a matter of law.
 

 Paragraphs 1, 5, and 7 of Barksdale’s petition allege a systematic exclusion of all but a token number of Negroes from the grand jury of Orleans Parish. Paragraphs 6 and 7 allege a systematic exclusion of all but a token number of Negroes from the petit jury venire of Orleans Parish. These identical issues were passed upon on the merits by the district court, the Louisiana Supreme Court, and the United States Supreme Court on Barksdale’s trial, appeal, and application for certiorari. Petitioner contends, however, that he presents a new matter to the court under Paragraph 7 of his petition:
 

 “Petitioner alleges that he was denied a fair trial by a jury representing a true cross-section of the community by the laws of the State of Louisiana which do not provide any compensation to grand or petit jurors in criminal cases * *.
 
 *449
 
 * * * the judges * * * customarily excused prospective jurors who were daily wage earners or who would suffer financial hardship from service without pay ***.*** Petitioner is an indigent Negro; the aforementioned policy of the State of Louisiana at the time of petitioner’s trial systematically excluded daily wage earners, qualified prospective jurors unable to bear the financial burden of service without pay, and excluded in fact a large percentage of numbers of the Negro race to the great prejudice of petitioner * * *.”
 

 This court thoroughly disposed of all the arguments made by petitioner in regard to systematic exclusion in selection of jurors in State v. Barksdale, 247 La. 198, 170 So.2d 374, 379-384. This court, with Mr. Justice Summers as its organ, discussed these issues at length and in detail, and found no planned, systematic discrimination.
 

 Petitioner alleges that Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), is applicable to his contention that the policy of the State of Louisiana systematically excluded daily wage earners. The facts as found by the Supreme Court in Thiel are not similar to the facts in this case. It should be noted that the instant case arose after Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, in which the conviction of Eubanks was reversed on the ground of racial discrimination in the method of selecting jurors in Orleans Parish, and that this method of selection of jurors no longer existed in New Orleans at the time Barksdale was indicted and tried.
 

 Petitioner argues that the holding in Labat v. Bennett (C.C.A.5 1966), 365 F.2d 698, should be applied to the instant case. This court is not bound by a decision of a United States Court of Appeals. In any event, however, Labat was decided upon the same facts as found in Eubanks v. Louisiana, and those facts are dissimilar to the facts which existed at the time of the selection of the grand and petit juries here involved. In Labat the court held:
 

 “ * * * it was one of
 
 systematic total
 
 exclusion of daily wage earners as a
 
 class.
 
 In this respect the case differs materially from Fay v. People of State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043, and United States v. Flynn, 2 Cir. 1954, 216 F.2d 354, relied upon by the district court. The court in those cases accepted the principle that a jury should represent a cross-section of the community but found that the defendants’ statistics did not prove a policy or ‘formal method’ of total or systematic exclusion of laborers
 
 (Fay)
 
 and of Negroes, Puerto Ricans, and laborers
 
 (Flynn).
 
 Cf. United States v. Bowe, 2 Cir. 1966, 360 F.2d 1, 7.”
 

 
 *451
 
 This court found in State v. Barksdale, supra, that factors unrelated to any planned, systematic discrimination made for a difference in the percentages of Negroes and whites in the jury venire. This court found additionally that in petit jury selection more Negroes than whites are disqualified by reason of objection to capital punishment stated on their voir dire examination. This court found as a matter of fact that there was no discrimination as to the petitioner’s race. Additionally, the facts found by this court show that there was no systematic, planned, or formal exclusion of any group or class in the method used in selecting grand and petit jurors. The facts stated by the court in regard to excusing daily wage earners from jury service clearly show that there was no
 
 formal
 
 or
 
 systematic
 
 exclusion. It was stipulated in the case of State v. Johnson, supra (see Footnote 1), and the stipulation is found in the record in State v. Barksdale, that:
 

 “ * * * however, an exceedingly large number of Negro males who appear before the Jury Commissioners disqualify themselves for jury service by stating either that they can not read or write or that they have had only a very small amount of formal schooling, or by showing that they are self-employed or that their employers will not excuse them from work and will not pay them wages if they serve on a jury * * * .”
 

 One of the judges of the Criminal District Court for the Parish of Orleans testified on the hearing before Barksdale’s trial:
 

 “Q. Did you find that many prospective jurors both colored and white requested to be excused?
 

 “A.
 
 Yes they had a multiplicity of reasons for being excused.
 

 “Q. Financial ability was that one of the reasons that persons would ask to be excused for. Most of them would have lost their commissions if they had to serve?
 

 “A. Yes.
 

 “Q. Was this a reason used by both races equally, or would you say that you found one race with more than the other with this particular excuse ?
 

 “A.
 
 No. I remember it was equally divided.”
 

 We find a complete factual determination of all of petitioner’s foregoing contentions in the previous record. If we assume arguendo that the issue has not been determined, it is obvious, when the reasoning of Thiel v. Southern Pacific Co., supra, is applied to the record before us, that petitioner is not “entitled to be set at liberty”. In the Thiel case it was said:
 

 “The American tradition of trial by jury, considered in connection with ei
 
 *453
 
 ther criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. Smith v. [State of] Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 85 L.Ed. 84; Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 86 L.Ed. 680. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. * * *
 

 “ *
 
 * * Wage earners, including those who are paid by the day, constitute a very substantial portion of the community, a portion that cannot be intentionally and systematically excluded in whole or in part without doing violence to the democratic nature of the jury system. * * * ”
 

 In the Thiel case the court pointed out that the clerk of court and the jury commissioner intentionally and deliberately excluded all daily wage earners from the jury lists. Those facts are different from the facts in the present case. Here the evidence shows that the notices were sent out to the prospective jurors without regard to race or employment status as daily wage earners or otherwise, and without review of educational or other qualifications. Thiel is inapposite, for there was no
 
 intentional, systematic
 
 exclusion of any class in this case.
 

 The foregoing contentions are therefore rejected.
 

 Petitioner’s additional complaint, that women were excluded from the selection of jurors and that this exclusion resulted in discrimination to his detriment, is without merit. This argument has been dismissed by this court in State v. Clifton, 247 La. 495, 172 So.2d 657 (1965), and by the United States Supreme Court in Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961).
 

 Petitioner alleges also that the death penalty for rape has been enforced in a manner discriminatory against Negroes. This allegation is likewise without merit. This argument was urged in Barks-dale’s trial in the lower court, but when the case was argued before this court on appeal, this contention was abandoned. Moreover, the survey conducted by the clerk’s office of the Criminal District Court for the Parish of Orleans, attached to the State’s motion to remand in that case, proves that the death sentence for aggravated rape has been imposed upon white as well as upon Negro defendants.
 

 The contention that the state statutes should provide for a right of allocu
 
 *455
 
 tion to allow a partial waiver of a defendant’s rights under the Fifth Amendment has been the subject of previous litigation and was found to be without merit. See Raffel v. United States, 271 U.S. 494, 46 S. Ct. 566, 70 L.Ed. 1054 (1926).
 

 Petitioner’s final contention is that the death penalty is a form of cruel and unusual punishment and as administered deprives him of the equal protection of the laws. This contention is similar to the allegation of discriminatory enforcement of sentencing in rape cases, and, as noted in our discussion of that contention, the facts do not support this allegation. In Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963), where the defendant urged that the death sentence for a convicted rapist was in violation of the Eighth and Fourteenth Amendments, the United States Supreme Court refused writs. This contention is also without merit.
 

 We conclude, then, that for all of the reasons here assigned there has been no denial of due process.
 

 The application for writ of habeas corpus is denied and dismissed without a hearing.
 

 SANDERS, J., concurs in the result.
 

 [1]
 

 . See also State v. Simpson, 247 La. 883, 175 So.2d 255, cert. den. 384 U.S. 1014, 86 S.Ct. 1945, 16 L.Ed.2d 1035; State v. Evans, 249 La. 861, 192 So.2d 103, cert. den. 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed. 2d 187; State v. Johnson, 249 La. 950, 192 So.2d 135, cert. den. 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374. These three eases were submitted on the Barksdale evidence on the issue of jury selection. Evidence in all four cases was made part of each record by stipulation.
 

 [2]
 

 . Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).
 

 [3]
 

 . Comment, La.C.Cr.P., Art. 362.
 

 [4]
 

 . Senate Report No. 1797, 89th Cong. 2nd Sess., p. 1 U.S.Code Congressional and Administrative News, p. 3663: “The number of applications by State prisoners for writs of habeas corpus has been steadily increasing. * * * ”, as shown by the following statistics: 1941-134; 1957-814; 1963-1692; 1964-3248; 1965-4845; first nine months of fiscal 1966-3773.
 

 [5]
 

 . See Footnote 4. The sudden increase in applications in 1964 (3248) over those in 1963 (1692) can be attributed to the enlarged right to writ of habeas corpus granted to state prisoners by Fay v. Noia.
 

 [6]
 

 . (A) In Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, 786, the United States Supreme Court said: “We hold that a federal court must grant an evidentiary hearing to a habeas corpus applicant under the following circumstances : If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence, (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas corpus applicant a full and fair fact hearing.”
 

 (B) Title 28 U.S.C. § 2254(d) as amended in 1966 reads:
 

 “(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a writ
 
 *443
 
 ten finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
 

 “(1) that the merits of the factual dispute were not resolved in the State court hearing;
 

 “(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
 

 “(3) that the material facts were not adequately developed at the State court hearing;
 

 “(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
 

 “(5) that the applicant was an indigent and the State court, in deprivation of his constitutional light, failed to appoint counsel to represent him in the State court proceeding;
 

 “(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
 

 “(7) that the applicant was otherwise denied due process of law in the State court proceeding;
 

 “(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
 

 “And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.”