219 So.2d 493

**STATE of Louisiana**

**v.**

**Alfred WHITFIELD.**

**No. 49268.**

Feb. 24, 1969.

Bernard E. Burk, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Gar-

rison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

HAMITER, Justice.

In an indictment by the Grand Jury of the Parish of Orleans Alfred Whitfield, the defendant herein, was charged with the murder of one Percy Thomas. He was tried by a jury, which returned a verdict of guilty without capital punishment, and thereafter was sentenced to serve the balance of his natural life at hard labor in the Louisiana State Penitentiary. He is appealing from such conviction and sentence.

During certain pretrial proceedings, and in the course of the trial, the defendant reserved and later perfected fourteen bills of exceptions. However, for a reversal of his conviction and sentence he relies primarily on bill of exceptions No. 11. We think that there is merit in this particular bill.

The circumstances out of which bill No. 11 arose are as hereinafter set forth. During the cross-examination by defense counsel of Lt. Guy Lartigue, of the New Orleans Police Department, he was asked if Celeste Parker (from whom Lartigue had secured the alleged murder weapon) had not told him that the defendant was with her at her apartment (away from the scene of the crime) *at two o'clock in the morning of July 16, 1966, the established time of the killing.* The witness gave a negative reply. Counsel then asked the witness if he had not stated, in a signed and filed daily police report of July 28, 1966, that Celeste Parker had informed him (the witness) that the accused was at her home at two o'clock in the morning of July 16, 1966. The witness said that he had not so stated. Whereupon counsel called for an "in camera" inspection of such report, he apparently being of the belief that it did contain that recitation.

As said by the trial judge in his per curiam, counsel was attempting to impeach the witness. The judge, however, declined to make the requested "in camera" inspection. Instead, he called for the report and, without permitting defense counsel to see it, he gave it to witness Lartigue for examination. He then permitted defense counsel again to put the question as to whether the report contained the disputed statement. After examining the document the witness said that it did not contain such a statement; that it showed that Celeste Parker told him that the accused was with her in the morning of July 16, 1966, but that she did not specify the time. Defense counsel then ceased his questioning of Lartigue. Whereupon the state offered to introduce the report *in its entirety* into evidence. Over defendant's objection the introduction was permitted, and bill No. 11 was reserved.

No instruction regarding the effect of the document was given to the jury. And

later, during its deliberation, the jury called for the report which was taken to them in the jury room.

In overruling the defendant's objection the trial court observed that "under the Sbisa case when counsel for the defense calls for a report for the purpose of impeachment—that is one of the exceptions that they can look at the report, but they cannot take that chance without knowing that the State can offer the exhibit in evidence. I therefore overrule your objection under the authority of the Spisa [Sbisa] case, and I will permit the statement marked S–12 to be received in evidence."

The judge was obviously referring to the case of State v. Sbisa, 232 La. 961, 95 So.2d 619, because his per curiam to this bill cites State v. Sbisa, supra, and contains the observation that in such case the conviction was set aside and the defendant discharged and that "the defense attorneys asked for a written report allegedly signed by the witness on the stand to refresh his memory. Actually, it was used to cross-examine the witness."

The Sbisa decision in no way supports either the trial court's ruling that the document should have been produced for impeachment purposes or that, having been produced, it must be introduced into evidence for inspection by the jury.

In the Sbisa case a police officer was charged with malfeasance in office for intentionally refusing to arrest and prosecute other members of the police force for committing public bribery. The main prosecuting witness, and the only one produced by the state to show the accused's guilty knowledge, admitted having made a prior statement to the Police Superintendent in connection with the investigation and that it had been reduced to writing. While being examined he stated that he did not remember whether he had told the Superintendent about certain conversations between him and the defendant or what he said occurred. He further testified that he did not have a copy of his written statement given to the Superintendent, but that looking over one would certainly refresh his memory. Defense counsel then called for production of the report for the purpose of *refreshing the witness' memory*. This was denied.

On the appeal in that case from a conviction we observed that "*It would seem* that the interests of justice would be better served by having allowed this witness to refresh his memory with respect to a matter very material to a successful prosecution. This is particularly so because the State was relying solely on the testimony of the witness Bray to show knowledge by the defendant of the alleged graft being engaged in by his subordinates."

First of all, those observations appear to have been *purely dicta*. We specifically stated in the opinion that we would not

rest our decision to reverse the conviction on the bill relating to that alleged error, but rather would rest it on two other unrelated bills which were found to be meritorious. Besides, from the foregoing recitation of what occurred in that case, it is clear that the only issue involved was whether *the witness* should have been shown his prior statement to *refresh his memory. There was no question of the right to production of the document for the purpose of impeachment. Nor was the jury shown the instrument, because it was not, in fact, produced.*

■ At the time that the Sbisa holding was rendered we also handed down our decision in State v. Weston, 232 La. 766, 95 So.2d 305. Therein we concluded, after a painstaking review of our jurisprudence and that of other jurisdictions, that a defendant is not entitled to the production of a prior written statement of a state witness for the purpose of impeachment unless the proper foundation has been laid to entitle him to view such document—for example, when the witness admits on the stand that the statement is contrary to his testimony. In other decisions we have reiterated our holding that, conceding that a defendant can sometimes compel the production of a written report of a police officer (such as in Sbisa, perhaps), " * * * The jurisprudence is now well settled that the State is not required to permit inspection of a police report or a prior statement for use in cross-examination of a State witness for impeachment purposes unless the accused first shows that the report indicates that one or more of the material statements therein are contrary to the sworn testimony of the witness. State v. Weston, 232 La. 766, 95 So.2d 305; State v. Sbisa, 232 La. 961, 95 So.2d 619 and State v. Cooper, 249 La. 654, 190 So.2d 86." State v. Martin, 250 La. 705, 198 So.2d 897. See also State v. Bonner, 252 La. 200, 210 So.2d 319 and State v. Young, 249 La. 1053, 1054, 193 So.2d 243.

■ No foundation in this respect was laid for production of the police report in the instant case, either by testimony of the witness himself or by that of any other person. Consequently, it was error in the first instance for the court to have ordered it produced for impeachment purposes.

■ Nor do we find any authority whatsoever for the court's permitting the document to go to the jury in its entirety (it included other matters not related to the question involving the credibility of the witness) when the witness testified, after reading the document, that it did not contain the statement that Celeste Parker had told him that the accused was at her residence at the alleged time of the offense. At that point its introduction served no purpose but to present to the jury the other statements contained in it, damaging to the

accused, which would otherwise have been inadmissible in evidence.

In this court the state argues with much persuasiveness that permitting the jury to view the document was proper because, if it could not be shown to the jury, that body would not know for sure whether it contained a conflicting statement or not. The state, it urges, would then be helpless to guard against persistent questioning and innuendoes anent the document and its contents, impugning even the reliability of the witness in saying that it did not contain the alleged statement. Suffice it to say, in answer to such argument, that did not occur in the instant case. When the witness testified that the report failed to show that Celeste Parker gave a definite hour at which the accused was with her, defense counsel abandoned this line of questioning.

But, assuming arguendo, that it was proper for the police report to have been admitted in its entirety, under these or other circumstances (such as was suggested by the state), we are of the opinion that the court committed a fatal error in failing to instruct the jury, at the time of its introduction, that it was to be considered by them only for the purpose of weighing the credibility of the witness, and that no part of it could be used as substantive evidence. We think it particularly important that the jury should have been told that they could consider only that portion there-of relating to Celeste Parker's conversation with the witness as to the time the defendant was with her.

■ In numerous cases we have held that such an instruction is necessary when the state introduces prior inconsistent statements for impeachment of defense witnesses, and that the failure of the defendants to request it does not relieve *the court of its duty* to so instruct. Thus, in State v. Barber et al., 250 La. 509, 197 So.2d 69, we said: " * * * When an attempt is made to impeach a witness by the introduction of prior inconsistent statements the judge knows at once the limited purpose for which such evidence can be accepted. And it should be incumbent on him, and his duty, to so advise the jury without leaving it to the probability that, being laymen and not informed as to the niceties of the law, the members thereof will give it improper application."

We see no reason why this rule, as well as the purpose to be served by it, should not be equally applicable if *the state* is to be permitted to introduce such a prior statement of one of its *own* witnesses, the effect of which is the corroboration of his testimony. In our opinion this becomes the more imperative when, as in the instant case, the statement is a police report containing much other information otherwise inadmissible and not related to the issue of the witness' credibility or reliability. We think that justice demands such a result

when the situation is viewed in the light of the fact that a defendant is not permitted a pretrial inspection of such a prior police report.

We are not at all impressed with the state's argument that no prejudice resulted from the jury's viewing the report, without the proper instruction, because it merely recited facts which were otherwise shown by the evidence. This simply is not so. First of all, Celeste Parker's testimony at the trial provided an alibi for the defendant, and the state did not attempt to cross-examine her. The recitation in the report that she was the accused's common law wife (not elsewhere shown) would certainly tend to show bias on her part and lessen the weight of her testimony.

But most important the report contained the undoubtedly damaging hearsay statements allegedly made by Celeste Parker (to Officer Lartigue) that she had found a pistol (asserted by the state to be the murder weapon) in a chifforobe drawer in her home; that she suspected it belonged to the accused; that she did not own a gun herself; and that the only person who stayed there with her was the accused.

This clearly contradicts the testimony of the defendant (who took the stand in his own behalf) that he did not live at the Parker home, and that when he went there on the date of the crime it was only his second visit to that place. It also tends

strongly to contradict his testimony that he did not own the alleged murder weapon, and it specifically connects him with ownership and/or possession. In this connection it is particularly important to note that Lartigue had testified *only* that the weapon *had been given* to him by Celeste Parker.

When defendant was being cross-examined concerning the gun he was asked if he knew how it had gotten into her apartment. Defense counsel objected on the ground that the state had not established *where* the gun was found but that the testimony showed only that it was given to the officer by Celeste Parker. The court overruled the objection, observing that it could not comment on the testimony but that *"I might also state in connection with that ruling that S–12 is in evidence."* And on this basis, it permitted the defendant to be cross-examined on the presence of the gun in the Parker home which was not otherwise shown. In that instance the court itself, in the presence of the jury, gave substantive effect to the prejudicial statements attributable to Celeste Parker in S–12—the police report.

In view of these circumstances, we must conclude that the report did contain statements, prejudicial to the accused, which would not otherwise have been admissible into evidence. Added to this is the fact that the jury especially sought to examine (and it obtained) the document while it was deliberating. In the absence of a proper

instruction from the court as to the effect ·of the contents of the instrument, and the court's having itself given it substantive effect, we cannot help but conclude that ·the inadmissible and objectionable parts thereof influenced the jury in reaching its ·verdict.

 Although the conviction and sentence must be set aside, because of our conclusion concerning the error complained of in bill of exceptions No. 11, we deem it ·necessary also to treat (among others) of bills of exceptions Nos. 1 and 5. The former was reserved to the court's overruling a motion to quash the indictment, in which motion the accused urged that the grand jury which indicted him was illegally constituted. The latter bill was reserved to the ·court's overruling the accused's motion to quash the petit jury venire. Both motions present the same issue, they being based on the alleged systematic exclusion of daily wage earners and women from the grand and petit jury panels.

This court on at least two occasions has ·dismissed as without merit the complaint that women were systematically and intentionally excluded from the grand and petit juries when such were selected with due regard to LRS 15:172.1 which stipulates that no woman shall be drawn for jury service unless she has previously filed a written declaration of her desire to be subject to such duty. State v. Reese, 250 La. 151, 194 So.2d 729; State ex rel. Barksdale v. Dees, 252 La. 434, 211 So.2d 318. See also Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118.

Likewise, we conclude that the defendant's complaint that the juries which indicted and tried him were defective, because wage earners were systematically excluded from jury venires, lacks substance. To support the bill he relies on the case of Labat v. Bennett, 5 Cir., 365 F.2d 698 (cert. den., 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334); and he argues that "the same vice which permeated the jury in the Labat case was in existence at the time the grand jury was empaneled and the indictment returned in the instant case."

Initially, we mention, as we did in State ex rel. Barksdale v. Dees, supra, that we are not bound by a decision of the United States Court of Appeals. Nevertheless, we observe also that the Labat case was decided on the same facts as found in Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; but that those facts are not the same as they existed when the instant grand and petit jury, and their respective venires, were selected.

Our review of the record herein convinces us that it abundantly supports the statement of the district judge in his per curiam to these bills that "the system [of selecting juries in Orleans Parish] has materially changed" since the empanelling

of the jury found to be defective in the Labat decision. The change has been recognized in at least three decisions of this court. State v. Barksdale, 247 La. 198, 170 So.2d 374 (cert. den., 382 U.S. 921, 86 S. Ct. 297, 15 L.Ed.2d 236), State v. Vernon, 251 La. 1099, 208 So.2d 690 and State ex rel. Barksdale v. Dees, supra.

In fact, in the Vernon case (decided after Labat) we rejected the identical argument made here, and it involved the same grand jury which indicted this defendant. The opinion in each of the last cited cases sets forth the manner in which the juries were selected, and the record now before us shows that the same procedure was followed here. It would serve no useful purpose to reiterate it. Suffice it to say that the opinion in State ex rel. Barksdale v. Dees, supra, contains a thorough discussion of the facts and of the federal cases which are relied on by this defendant. It is controlling in the instant cause.

Since we do not find that there was a systematic or intentional exclusion of any group as a class in the selection of the jury venire herein, or of the juries which indicted and tried this defendant, there is no merit in either bill of exceptions No. 1 or No. 5.

■ Bill of exceptions No. 6 was taken to the court's permitting certain hearsay statements of the deceased (made immediately before he was shot) to be related during the examination of one Dorothy Britten who was with him when he was killed. The bill is groundless. The statements were clearly part of the res gestae.

■ Bill of exceptions No. 12 was reserved to the introduction of a pistol, some bullets, and a receipt for the pistol (alleged by the state to be the murder weapon), on the ground that the evidence did not show a proper chain of custody. We find no merit in it. The objections to their introduction go to the weight of the evidence rather than its admissibility.

We have examined the other bills and are of the opinion that the actions complained of therein probably will not recur in another trial of the accused. Therefore, we will not discuss them.

For the reasons assigned the conviction and sentence of this defendant are set aside, and the case is remanded to the district court for the purpose of affording him a new trial.

SANDERS, J., dissents.