294 So.2d 223 (1974)
STATE of Louisiana
v.
Joseph Fershion ASHER, Jr.
No. 54092.
Supreme Court of Louisiana.
April 29, 1974.
*224 Robert F. Fleming, Jr., Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant, Joseph Fershion Asher, Jr., was charged by bill of information with armed robbery. He was tried, convicted as charged and sentenced to serve twenty years in the state penitentiary. He reserved nine bills of exceptions during the trial leading to his conviction. Bills 1, 2 and 3 are not urged on appeal and are considered abandoned.
In the early morning hours of October 31, 1971, Philip Montalbano picked up two females hitchhiking on Bourbon Street in the French Quarter of New Orleans. At their request he drove them to the 2600 block of DeSoto Street. As they were getting out of the car, a male, later identified by Montalbano as the appellant, got in the car and allegedly took $220 in travelers checks, a wristwatch, driver's license, credit card and bank card from Montalbano at gunpoint. After having Montalbano drive him around for a short time, the robber then let him out unharmed with instructions to walk several blocks in a certain direction where he would then find his car.
On November 8, 1971, the appellant was arrested on a street in the French Quarter after the police had received information from a confidential informant that he had been passing travelers checks. When he proffered the identification requested by the police, he, according to the testimony of arresting officer L. J. Canal, "started flapping his coat open and closed," affording a view of a pistol stuck in his pants. This pistol was later introduced into evidence at this trial as the one allegedly used in the robbery of Philip Montalbano. A thorough search turned up a Spur credit card in Montalbano's name. When questioned about the credit card, appellant, according to Officer Canal, stated that he had committed the robbery of Mr. Montalbano, that he was crazy and had just escaped from the third floor of Charity Hospital.

Bill 4
This bill was reserved when L. J. Canal, one of the arresting officers, was allowed, over defense counsel's objection, to testify concerning the content of an inculpatory statement made by defendant at the time of his arrest.
Defense counsel argues that the statement was not voluntarily made and that appellant had not waived his constitutional rights as enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In his per curiam to Bill 4 the trial judge tells us that he overruled defense counsel's objection because he was convinced that the statement was freely and voluntarily made.
The record further reflects that both arresting officers testified that appellant made the inculpatory statement only after he had been informed of his constitutional rights.
The admissibility in evidence of a confession is for the trial court; its weight is for the jury; and it is the settled jurisprudence of this Court that the conclusion of the trial judge respecting the testimony on the giving of a confession involves *225 a question of fact which will not be disturbed on appeal unless it is not supported by the evidence. State v. Cripps, 259 La. 403, 250 So.2d 382 (1971).
This bill is without merit.

Bill 5
Outside the presence of the jury Officer Canal summed up the confession of the appellant as follows:
"After asking him about the credit card, the subject stated that he just as well go ahead and admit to what happened, that he was crazy, we were going to find out anyway, he had just escaped from Charity Hospital third floor forI think he was there for cutting his wrist or throatand he stated that he robbed the owner of this credit card in the 2600 block of DeSoto Street about a week previous. He then went on to say that his girlfriend and another white female picked up the victim somewhere in the French Quarter area and drove down with the victim to the 2600 block of DeSoto where in front of the subject before the bar's address; and he entered the car, stuck the pistol in the victim's face, and forced him to turn over his belongingssome travelers checks, the credit card, and I think some money was involved."
After the trial judge determined the confession to be admissible, and after the predicate had again been laid in the presence of the jury, Officer Canal testified:
"He stated that he just as well get it out in the open because we were going to find out anyway, that he had escaped from Charity Hospital on the third floor, he went there for cutting his wrist or his neck, and he had gotten that credit card after robbing a man with a gun, the same gun we had just taken off of him, in the 2600 block of DeSoto Street. He and two other girls had set up this little robbery, the two girls had taken the victim from the French Quarter area down to the 2600 block of DeSoto Street."
Defense counsel interposed an objection "because this is certainly not the testimony that was elicited in the absence of the jurors." The trial court overruled the objection "for the reason that there need not be, under the law, a verbatim repetition," and this bill was reserved.
This bill is without merit. The testimony complained of is substantially the same as that given earlier out of the presence of the jury; the only distinction is that the earlier testimony did not conclude that a "set up" had occurred. The only purpose of the out-of-the-presence-of-the-jury hearing is to determine admissibility; therefore, differences, irrespective of the degree of inconsistency, in the content of the testimony reiterating the content of the confession are irrelevant.

Bill 6
While the State was putting on its case Officer Saacks, who had assisted in Asher's arrest, testified that on the day after the arrest and confession he had shown the victim of the instant robbery, Philip Montalbano, six photographs of white men, among which were a picture of Asher and five "photographs that resembled Asher," and that without suggestion of any kind Montalbano had positively identified the picture of Asher as portraying the individual who had robbed him approximately a week before. Defense counsel objected to this testimony on the ground that "under the best evidence rule, he should produce the photographs." To the overruling of this objection Bill 6 was reserved.
We find that the trial court erred in allowing Officer Saacks to testify as to the content of the six photographs without those photographs being thereafter submitted into evidence. The jury was thus prevented from making their own determination as to whether the photographs were suggestive.
*226 However, the record discloses that the victim made a positive in-court identification of appellant as the perpetrator of the robbery, and the record in no way indicates that this in-court identification was tainted by the out-of-court photographic identification. Further, the victim testified that the procedures used in the photographic identification were in no way suggestive.
In view of the additional factors that, at the time of his arrest, appellant was in possession of property belonging to the victim, and that he confessed following his arrest and thereafter admitted at trial his commission of the robbery, we find the error complained of harmless. La.Code Crim.Proc. art. 921.

Bills 7 and 8
These bills were reserved when the State introduced into evidence at trial the pistol and credit card obtained from the person of appellant when he was arrested. The basis of the defense objection is that the testifying officers did not identify any signature or other markings on the pistol and credit card which purportedly are the same items taken from appellant. Neither did the officers testify as to how the items came into Court.
In State v. Dotson, 260 La. 471, 256 So. 2d 594,608 (1971) we held:
"To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
"The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402; State v. Martin, 250 La. 705, 198 So.2d 897; State v. Bertrand, 247 La. 232, 170 So.2d 386.
"The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. State v. Wright, 254 La. 521, 225 So.2d 201; State v. Whitfield, 253 La. 679, 219 So.2d 493; State v. Progue, 243 La. 337, 144 So.2d 352; 2 Wharton's Criminal Evidence (12th ed.), § 673, p. 617."
During the trial Officers Canal and Saacks and also the victim identified the gun and the credit card. Officer Canal stated that he could identify the gun by the tag he wrote on it. The credit card had the victim's name on it.
This bill is without merit.

Bill 9
This bill was reserved to the trial court's refusal to grant a new trial on the allegation that the jury verdict was contrary to the law and evidence. This Court has repeatedly held that such an allegation presents nothing for review. State v. Landry, 262 La. 32, 262 So.2d 360 (1972). Thus, this bill is without merit.
For the reasons assigned, the conviction and sentence are affirmed.