CALOGERO, Justice.
Jimmy Dale McCray was indicted by the grand jury for the Parish of Webster for the armed robbery of Mrs. S. H. Martin and Mrs. Loretta Dodson, employees of Quick-Sak Grocery in Springhill, Louisiana, Webster Parish, on January 21, 1974 in which approximately $650 in cash was taken in violation of La.R.S. 14:64. A jury found McCray guilty and he was thereafter sentenced to thirty years at hard labor. On appeal, he relies upon five assignments of error.
*1160 ASSIGNMENTS OF ERROR NOS. 1 AND 2.
Defendant asserts that the trial court erred in not allowing the introduction, at the hearing of the motion to suppress, of the full extradition proceeding (assignment number one) and in refusing to allow him to take the witness stand at the suppression hearing for the limited purpose of testifying with reference to the identification circumstances surrounding the extradition-ha-beas corpus hearing held in Chicago, Illinois on August 5, 1975 (assignment number two).
Defendant was taken into custody in Chicago, Illinois on or about April 8, 1975. On August 5, 1975, the victims of the robbery (Mrs. Martin and Mrs. Dodson, her daughter-in-law), were taken to Chicago for the extradition hearing where they identified defendant as the perpetrator of the armed robbery. Previously, some twelve hours after the offense which occurred on January 21, 1974, they had identified defendant from photographs submitted to them. Another witness, Lewis McCray who identified defendant and had known defendant all of his life, saw defendant running to his car parked on the roadway as he left the Quick-Sak after the robbery.
By motion, defendant sought suppression of all identification by the victims (photographic and at the extradition hearing) and by Lewis McCray. The latter neither viewed photographs nor was at the extradition-habeas corpus hearing in Chicago. At the hearing of this motion, defense counsel sought to introduce xerox copies of the transcript of the Chicago extradition-habeas corpus hearing. This request was correctly denied for the stated reason (in the trial judge’s per curiam) that copies were not admissible for “there was no proper certification by the Illinois court.” Defendant’s reliance upon La.R.S. 15:459 is misplaced for that statute allows introduction, during the trial of any criminal case by either party, of a record belonging to the court in which the trial is proceeding,[1] It does not sanction, without proper certification, the records of the court of another state. According to the record, defense counsel had some two months to secure the certified copy of the extradition hearing for introduction at this suppression hearing and offered no excuse for his lack of diligence.
Furthermore, even if the transcript of the extradition hearing should properly have been admitted, we can find no prejudice to defendant from the exclusion of that transcript. The transcript is attached to plaintiff’s brief and we have reviewed same. It offers defendant no assistance in his effort to establish that there was an impermissibly suggestive identification at the extradition hearing. About all that it does establish is the positive nature of the identification of defendant as perpetrator of the robbery by the victims thereof who testified at the extradition hearing.
Assignment of error numbered one lacks merit.
The second contention refers to the following. At the suppression hearing defendant sought to take the stand for the limited purpose of testifying with reference to what occurred at the extradition hearing held in Chicago. The motion to suppress identification which was before the court at the time was an attack not only upon the identification at the extradition hearing in Chicago, but upon the photographic identification by the two victims approximately ten hours after the armed robbery. The suppression motion was also an attack upon the right of the state to present the independent witness, Lewis McCray, to testify at trial. With respect to the latter, the witness McCray was simply a person who had seen defendant Jimmy Dale McCray leaving the store at the time of the robbery and crossing the street in the path of his truck, the defendant being a man whom the witness had known all of his life. This witness was not involved in any way in *1161 either the post-incident photographic identification or the Chicago extradition hearing. Inasmuch as all of these matters were properly subject to court inquiry on the motion to suppress identification, it was proper that the defendant not be permitted to testify exclusively as to what occurred at the extradition hearing held in Chicago.
Assignment of error number two therefore is without merit.
ASSIGNMENT OP ERROR NO. 3.
Defendant assigns as error the refusal of the trial judge to suppress the in-eourt identification of him by the two victims, claiming that these identifications were based upon alleged pre-trial identification irregularities.
Specifically, defendant seeks to have it appear that the circumstances of the identification at the Chicago hearing amounted to an in-court, one-man show-up which was in fact a one-on-one identification. This is alleged to be so suggestive as to taint the subsequent in-court identification. Defendant relies, inter alia, upon State v. Newman, 283 So.2d 756 (La.1973). Additionally, defendant contends that the victims made a tentative identification from photographs which were not preserved. They had been brought from Arkansas and returned to the Arkansas authorities and were not introduced at trial. Error is claimed in allowing the officers to testify as to this photographic lineup when the photographs were not available, citing State v. Asher, 294 So.2d 223 (La.1974).
 The ruling allowing the in-court identification, under the facts presented, was not error as there was no “taint” prior thereto. There is nothing to suggest that the photographs submitted to the victims some twelve hours after the robbery were impermissibly suggestive. Each victim identified defendant from these photos independently of the other and without suggestion of any kind. From five to six photographs were secured from Arkansas authorities and submitted to them. According to Deputy Bloxom, he secured pictures of similar looking black men for this display. At the extradition hearing, both victims identified the defendant immediately when he came through the door of the courtroom. The contention that this was a one-man, one-on-one confrontation is simply not supported by the record. The courtroom was not empty at the time. According to Blox-om, who was present at the extradition hearing, when they entered, there were probably 40 or 45 people in the courtroom.[2]
Assignment of error number three lacks merit.
ASSIGNMENT OF ERROR NO. 4.
Defendant objected to the trial judge allowing Marshal Kenneth Creech of Stamps, Arkansas, to testify complaining that this witness was not sequestered as requested in accordance with article 764 of the Code of Criminal Procedure.
All witnesses present were put under the rule when the sequestration was ordered. At this time, Marshal Creech was not present and had not yet arrived in Minden. When defendant finished testifying, around 3:30 in the afternoon, the state called Creech in rebuttal. It was ascertained that Creech had arrived at 1:30. The judge questioned him, and it was established that, while he was in the building since that time, he had not been in the courtroom, had not talked to any of the witnesses and had only conversed with the prosecuting attorney. The court found him qualified to testify, noting that had he been placed under the *1162 rule, he would still be allowed to talk to attorneys for either side; hence, no harm was suffered by defendant.
The rule providing for sequestration of witnesses at trial is contained in article 764 of the Code of Criminal Procedure. It recites:
“Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.”
The purpose of this article is to prevent the influence of a witness by the testimony of prior witnesses and to strengthen the role of cross-examination in developing the facts. Article 764 vests discretion in the trial judge as to the disqualification of a witness even when the rule of sequestration has been violated. State v. Batts, 324 So.2d 415 (La.1975). It is within the sound discretion of the trial court to determine whether a witness who is not placed under a sequestration order, or who violates an order of sequestration, may testify. State v. Nix, 327 So.2d 301 (La.1975); State v. Washington, 294 So.2d 794 (La.1974).
Under the circumstances presented, the trial court did not abuse this discretion. The trial judge ascertained by questioning that Creech had not conversed with any witnesses, had not been in the courtroom, and had only talked to the prosecuting attorney. Consequently, assignment of error number four presents no error.
ASSIGNMENT OP ERROR NO. 5.
The complaint in assignment of error number five is twofold. Defendant says that the prosecuting attorney “made certain prejudicial remarks to the jury which could not help but prejudice their mind against defendant,” specifically alluding to only one objection by defendant, which had to do with the prosecutor’s stating that defense counsel was paid to represent defendant and to have reasonable doubt as to his client’s guilt.
In response the trial judge did not overrule the objection; rather, he admonished the jury to disregard remarks by both counsels that were related to compensation.
The comment by the district attorney came in rebuttal argument after defense counsel had stated his personal opinion as to the innocence of the defendant. Neither that statement of defense counsel, nor the objected-to statement of the prosecutor, constitute proper argument. On the other hand, there was no reversible error committed since the trial judge, in response to defense counsel’s objection, properly admonished the jury to disregard such comment.
The second aspect of defendant’s assignment of error number five was purported error in the trial court’s refusing to grant a mistrial upon motion of defense counsel.
Counsel was dissatisfied with innumerable statements that the prosecutor made in closing argument which he contends constituted prejudicial remarks particularly those statements made by the prosecutor referring to defendant’s race. To these statements counsel did not object during argument. He waited until after the jury had been instructed on the law and the case submitted to them before moving for a mistrial. We have reviewed each of the complained of statements made by the district attorney and find no merit to the assignment. The most serious complaint raised by defense counsel concerns the purported prejudicial reference to race. Article 770 of the Code of Criminal Procedure does, of course, require that a mistrial be ordered upon motion of the defendant when the district attorney makes a remark or comment referring directly or indirectly to race if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury. Our review of the prosecutor’s argument leads us to conclude that he did not make an immaterial and irrelevant ref *1163 erence to race which might have created prejudice against this defendant in the mind of the jury.
His statements referred to the fact that two witnesses saw a black man in green overalls running up the right side of the street. At trial, the victims testified that they were robbed at gunpoint by a black man wearing green coveralls or overalls. Mike Crews and his passenger, Mrs. Montgomery, testified at trial that they were passing in the vicinity of the offense when they saw a black man in green overalls running on the side of the street. The prosecutor was relating the fact that the testimony of these witnesses corroborated the description given by the victims. It was in direct reference to the identity of the robber and not stated for the purpose of appealing to prejudice as prohibited by article 774.
Assignment of error number five lacks merit.
For the foregoing reasons the conviction and sentence are affirmed.
DIXON, J., concurs.

. It does not appear that the copy of the extradition hearing transcript offered by defendant was part of the district court’s records in this case. Were that the case, R.S. 15:459 might well be applicable even with the transcript being uncertified.

. Specifically Mrs. Dodson, one of the two victims, testified at the suppression hearing as follows:
“Q. Mrs. Dodson, did anybody point this man out to you in Chicago.
A. No, in fact, the man before we even went into the courtroom had told us to look around the courtroom and see if we could pick him out. Well, we did and we couldn’t pick out anyone sitting in the courtroom and even in the courtroom the man came and told us to go out one at a time and look at everyone even in the hallway to see if we could pick him out and we did and we could find no one that we thought was the man but immediately when he walked in the door we said in unison almost that that’s him.”