(43 South. 984.)

No. 16,563.

STATE v. WIMBY.

(May 13, 1907.)

1. JURY—QUALIFICATIONS—RESIDENCE.

The temporary absence of a juror from the parish of his residence will not destroy his qualification for jury service therein, when, though living and working in another part of the state, he had no intention to change his permanent abode.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, § 254.]

2. CRIMINAL LAW — TRIAL — MISCONDUCT OF SPECTATOR.

The misconduct of a spectator, in open court, during the progress of a murder trial, furnishes no ground for the discharge of the jury, unless it be of such a nature as to have necessarily influenced the verdict of conviction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 2048–2053.]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Corinne Wimby was convicted of murder, and appeals. Affirmed.

Winston Overton and Plauché & Wall, for appellant. Walter Guion, Atty. Gen., and Leland Hugh Moss, Dist. Atty. (Lewis Guion, of counsel), for the State.

LAND, J. The defendant was indicted for murder, tried and found guilty without capital punishment. She appeals from a sentence of imprisonment for life in the penitentiary.

Defendant relies for reversal of the verdict and sentence on two bills of exception.

1. Defendant moved to quash the indictment on the ground that Hawkins Carrol, one of the grand jury that found the indictment, was incompetent to serve as a grand juror, because he had not been a bona fide resident of the parish of Calcasieu for one year next preceding his said service as required by Act 135 of 1898, p. 216, § 1.

Hawkins Carrol was born and reared in the parish of Calcasieu. He was there married and had his fixed abode. He was a teacher in the public high school for several years. In September, 1905, he accepted the position of professor of geology and biology in the State Industrial Institute of Ruston, La., and there remained with his wife and children until May, 1906, when he returned to Calcasieu parish. He went to Ruston to teach in the Industrial School for a season, but with no intention of there establishing a permanent residence. He paid his poll taxes in the parish of Calcasieu, and since his return has voted at two elections held therein. He has never had any intention to abandon his permanent and bona fide residence in the parish of Calcasieu. He had been in said parish about eight months just preceding his service as a grand juror.

Section 1 of act 135 of 1898 provides that the qualifications of a juror to serve in any of the courts of this state shall be as follows:

"To be a citizen of the United States and of this state, a bona fide male resident of the parish in and for which the court is holden for one year next preceding such service," etc.

These requirements were copied literally from section 1 of Act No. 54, p. 52, of 1880.

In State v. Alexander, 35 La. Ann. 1100, decided in 1883, this court held that:

"Mere temporary absence from the state, during the year prior to the service of a juror, if without the intention of changing citizenship or abandoning residence, will not destroy the qualifications of the juror."

In that case the statement of facts is as follows:

"It appears that the grand juror objected to had for more than a year sojourned in the state of Texas upon business of a temporary nature, but, as he declares, with no intention of changing his citizenship or abandoning his residence in Bienville parish. Upon concluding the business, he returned to his home, where he had been for about eight months prior to his summons as a grand juror."

The court declared that such temporary absence, under the circumstances and with

the intention disclosed, had no effect upon the juror's citizenship, domicile, or upon his residence, in the sense in which that term is used in Act No. 54, p. 52, of 1880.

"It is said that there is no technical definition as to what constitutes a 'residence,' but it is chiefly a question of intent." 24 Cyc. 200. The term "residence" implies permanency or for an indefinite period. Id., note 12.

In defining the political rights of the citizen the term "bona fide resident" is used in our state Constitutions. The same term is used in the acts prescribing the qualification of jurors. There is little or no distinction between the "residence" of the voter or juror and his "domicile." If the juror or voter has as a matter of fact lived in different parishes or precincts, his true residence must be determined by his intention as in other cases. Where there is any doubt, the place of registration or payment of poll tax is conclusive as indicating the true intent. In the case at bar both of these indices are present. We concur in the conclusion of the district judge that it was never the intention of the lawmaker to require the actual physical presence of the juror in the parish during every month of the year immediately preceding his service.

2. During the progress of the trial, upon the production before the jury of blood-stained garments purporting to have belonged to the deceased, a lady, dressed in black, sitting among the spectators, made an outcry, in the nature of a moan, and started to leave the courtroom. On reaching the door, she cried in an audible voice, "Poor Will." Whereupon counsel for the defendant moved the court to enter a mistrial and to discharge the jury. The motion was overruled by the court. It appears from the per curiam that the lady was a stranger to the judge and probably to the jury, and that the information that she was the mother of the accused was brought out by the action of the counsel for the defendant. The judge directed the sheriff to see that the lady did not re-enter the courtroom during the progress of the trial, and instructed the jury to disregard the incident and not to permit it to influence them in any manner.

It is evident that neither the court nor the prosecution was responsible for the unfortunate occurrence. The judge says that the evidence fully sustained the verdict returned by the jury, and that the accused did not suffer any injury from the action of the lady. It appears from the record that the defendant admitted the killing and relied on the plea of self-defense.

In State v. Renaud, 50 La. Ann. 662, 23 South. 894, the father of the deceased was sitting in the audience. The district attorney in the course of his address to the jury remarked:

"What will you do with the accused?"

The father exclaimed:

"Put a rope around his neck."

The judge at once took the necessary steps to prevent the repetition of any such remarks in the court. The verdict was guilty of murder as charged, and the accused was sentenced to be hanged.

The court refused to set aside the verdict, holding that the incident could not be viewed as having unduly influenced the verdict.

In State v. Robinson, 52 La. Ann. 551, 27 South. 129, a brother of the deceased interrupted and contradicted the accused while testifying in his own behalf. The judge imprisoned the disturber for contempt. This court declined to interfere, saying that the opinion of a district judge that the incident did not affect the verdict was a finding on a matter which he was peculiarly competent to determine.

In State v. Spillers, 105 La. 163, 29 South. 480, a murder case, the district attorney in closing his address appealed to the jury to bring in a verdict of guilty, whereupon the

crowd in the courtroom burst into applause, which the judge immediately suppressed, and sent the sheriff in the audience to apprehend the wrongdoers, at the same time instructing the jury to disregard the applause, and to be governed by their opinion alone. The defendant was found guilty as charged, and was sentenced to death. This court refused to interfere; it not being evident that the jury was influenced by the incident.

It is a general rule that "remarks of bystanders unfavorable to the accused, to or in the presence of the jury, and overheard by them, although reprehensible, are not ground for a new trial, unless it shall actually appear that a verdict of conviction was produced thereby." 12 Cyc. 730.

A fortiori the same rule applies to remarks made in open court, where the judge has the opportunity to counteract their possible prejudicial effects on the jury by rebuking the disturber and instructing the jury to disregard them.

In the case at bar the emotion displayed by a mother at the sight of the bloody garments once worn by her son was involuntary, and can hardly be called misconduct in the ordinary sense of the term. Manifestations of grief by spectators related to the accused or the deceased have never been considered as furnishing good ground for the discharge of juries.

We see no errors in the proceedings, and it is therefore ordered that the judgment appealed from be affirmed.