(81 South. 737)

No. 23375.

STATE v. WILLIAMSON.

(March 3, 1919. Rehearing Denied May 5, 1919.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ☜366(3)—RES GESTÆ.

A calm and deliberate response, "Yes, he got me," by a wounded person in answer to a question of a physician, "Do you realize your condition?" was not admissible in a homicide case as a part of the res gestæ.

2. HOMICIDE ☜203(1) — DYING DECLARATIONS.

A statement by a wounded person, "Yes, he got me," was not admissible in evidence as a dying declaration, where it was not proven that the wounded man believed he was dying when he made the declaration.

3. HOMICIDE ☜338(1) — HARMLESS ERROR — EVIDENCE.

In a homicide case, admission in evidence of a declaration by deceased, "Yes, he got me," could not have been prejudicial, where there was no proof that the declaration had reference to the defendant.

4. HOMICIDE ☜338(3) — HARMLESS ERROR — ADMISSION OF EVIDENCE.

In a homicide case, the admission in evidence of a declaration by deceased, "Yes, he got me," was harmless, if erroneous, where defendant did not deny that he killed deceased; his defense being that he committed the homicide in self-defense.

5. CRIMINAL LAW ☜659 — MISCONDUCT OF BYSTANDERS.

In a homicide case, where the widow with an infant on her lap caused an interruption of the trial by giving vent to her emotions and crying aloud, the court did all that was required of it, when the attorneys for defendant protested, by promptly having the sheriff take the woman out of the courtroom and instructing the jury to pay no attention to her display of grief and not to allow it to influence them in any manner whatever; defendant's attorneys having demanded no more.

6. CRIMINAL LAW ☜867—TRIAL—DISCHARGE OF JURY—MISCONDUCT OF BYSTANDERS.

A defendant in a homicide case was not entitled to have the jury discharged and a mistrial entered by reason of the fact that deceased's widow with an infant on her lap sitting immediately in front of the jury caused an interruption of the trial by giving vent to her emotions and crying aloud in court, the court immediately having her removed.

7. CRIMINAL LAW ☜719(1) — ARGUMENT — MATTERS NOT PROVEN.

The prosecuting attorney should not inform the jury of facts that might have been, but were not, proven.

8. CRIMINAL LAW ☜730(7)—HARMLESS ERROR—MISCONDUCT OF PROSECUTING ATTORNEY.

In a homicide case, where defendant who claimed that he killed deceased in self-defense introduced evidence that 10 or 12 months before the homicide deceased had cursed and abused him, any error of attorney assisting the prosecution in saying in his argument that the prosecuting attorney could have proved by ample evidence what had provoked the action of the deceased on the occasion referred to, a matter not proven, was cured where the court promptly admonished the attorney to confine his argument to the record and instructed the jury to pay no attention to the argument except in so far as it related to the facts that had been proven on the trial.

9. CRIMINAL LAW ☜1064(1) — APPEAL — GROUNDS FOR NEW TRIAL.

An allegation that a verdict was contrary to law and the evidence does not on appeal present for consideration any distinct question of law.

10. CRIMINAL LAW ☜956(13)—NEW TRIAL—MISCONDUCT OF JUROR—EVIDENCE.

On application for new trial, evidence *held* insufficient to show that a juror thrust his head through a window and told a certain person, "We've got him, I'll fix him," indicating by a gesture, placing his hand about his throat.

Provosty, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Oscar Williamson was convicted of murder, and he appeals. Affirmed.

L. Austin Fontenot and John W. Lewis, both of Opelousas, for appellant.

A. V. Coco, Atty. Gen., R. Lee Garland, Dist. Atty., of Opelousas (Peyton R. Sandoz, of Opelousas, and Thomas W. Robertson, of New Orleans, of counsel), for the State.

O'NIELL, J. Appellant was convicted and sentenced to life imprisonment for the crime of murder.

His first bill of exception was reserved to the refusal of the judge to order the jury to disregard certain testimony given by a physician, preliminary to the introduction of a dying declaration of the victim of the homicide. The physician testified that he came from his residence to the scene of the killing, a distance of about two blocks, in response to a telephone call; and, kneeling beside the wounded man, who was lying on the ground, asked, "Do you realize your condition?" To which the man replied, "Yes, he got me." The doctor testified that he then asked for writing paper on which to write the man's dying declaration; that a bystander brought a tablet of paper, and he (the doctor) wrote what the wounded man said.

[1-4] The attorneys for defendant objected to the introduction of the written declaration, on the ground that it was not proven that the wounded man believed that he was dying when he made the statement. On the request of the attorneys for defendant, the jurors were then withdrawn from the courtroom, and, in their absence, the district attorney proceeded with an attempt to prove by the witness that the wounded man had realized that he was dying when he dictated the statement as a dying declaration. Having failed to prove that the statement was a dying declaration, the district attorney announced that he would not offer it in evidence; and no further reference was made to it. The attorneys for defendant, however, requested the court to instruct the jury to disregard the testimony already given by the physician. The request was denied, because, as stated in the bill of exception, the judge considered the statement of the wounded man, "Yes, he got me," admissible in evidence as a part of the res gestæ, and as a dying declaration.

The statement was not a spontaneous or voluntary or impulsive declaration. It was apparently a calm and deliberate response to a question. Such declarations, made after the occurrence in question, cannot be considered a part of the res gestæ. The statement was not admissible in evidence as a dying declaration, and was not offered as such, because it was not proven that the wounded man believed he was dying when he made the declaration. It does not appear, however, that the statement of the wounded man, "Yes, he got me," was prejudicial to the defendant, as evidence in the case. There is no proof that the declaration had reference to the defendant. Even if it did refer to him, it was not prejudicial to him because he did not deny having killed the man; his defense was that he committed the homicide in self-defense. The verdict of the jury should not be set aside merely because the trial judge erred in admitting in evidence, either as a dying declaration or as a part of the res gestæ, a declaration that was not admissible, when it appears that the evidence could not have been prejudicial to the defendant on trial. State v. Chance, 122 La. 706, 48 South. 158.

[5, 6] The second bill of exception was reserved to an outburst of grief on the part of the widow of the man whom the defendant had killed. While a witness was identifying the clothing worn by the deceased at the time of the homicide, the widow, with an infant on her lap, sitting immediately in front of the jury, caused an interruption of the trial by giving vent to her emotions and crying aloud in court. The attorneys for defendant objected and protested that her display of grief was calculated to arouse sympathy for the widow and child and create prejudice against the defendant in the mind of the jury. It is recited in the bill of exception that the judge promptly heeded the protest of the attorneys for defendant, had the sheriff take the woman out of the

courtroom, and instructed the jury to pay no attention to her display of grief and not allow it to influence them in any manner whatever. It appears, therefore, that all that the defendant's attorneys requested was done to avoid any harmful effect of the widow's outburst of grief, and we cannot presume that the jury did not obey the judge's instruction. The attorneys did not ask that the jury be discharged and a mistrial entered in the case, and we do not think the defendant would have been entitled to that relief if it had been demanded. The occurrence complained of is not a cause for setting aside the verdict.

[7, 8] The third bill of exception was reserved to a remark made by an attorney, assisting in the prosecution, in his argument to the jury. It appears that a witness for the defense had testified that, about 10 or 12 months before the homicide, the deceased had cursed and abused the defendant with regard to certain letters which defendant had sent either to the deceased or to his brother. The letters were not offered in evidence, nor were their contents proven on the trial. The attorney assisting in the prosecution, however, in his argument to the jury, said that the prosecuting attorneys could have proven by ample evidence exactly what had provoked the action of the deceased on the occasion referred to, and what was meant by referring to the letters written by the accused. In response to the objection of the attorneys for defendant, the judge promptly admonished the attorney addressing the jury to confine his argument to the record, and instructed the jury to pay no attention to the argument except in so far as it related to facts that had been proven on the trial. That ended the incident, and we have no reason to doubt that the jury obeyed the judge's instruction. Although the attorney assisting in the prosecution, of course, should not have undertaken to inform the jury of facts that might have

been but were not proven, the error in this instance was not beyond correction by the timely and proper instruction of the judge.

[9, 10] The fourth and last bill of exception was taken to the overruling of defendant's application for a new trial. Beyond the broad allegation that the verdict was contrary to the law and the evidence, which contention, of course, does not present for our consideration a distinct question of law, the only new complaint made in the petition for a new trial was that there had been misconduct on the part of one of the jurors during the trial. The allegation, stated broadly, was that the juror, during a recess of the court, had leaned out of a window of the courtroom, on the second floor of the building, and, addressing a Mr. Roberts, who was sitting on a bench outside, said, "We've got him, I'll fix him," indicating by a gesture, placing his hand about his throat, that he (the juror) would give a verdict that would cause the defendant to be hanged. On trial of the motion, the juror was called to the witness stand by the attorneys for defendant, and testified, in explanation of the incident complained of, that he had taken a dose of antiseptic, which irritated his throat, and that he placed his hand to his throat and said to Mr. Roberts, "It's got me." He denied emphatically that he had said, "We've got him," or, "I'll fix him," and denied that he had made any reference whatever to the defendant or to the case on trial. Mr. Roberts, as a witness on the trial of the motion, testified that the juror had made the remarks and gestures attributed to him; but we think the evidence sustains the conclusion of the trial judge that Mr. Roberts misunderstood the juror's remarks and the accompanying gesture. A companion with Mr. Roberts, on the same bench, which was only eight feet long, did not hear the remark or observe the gesture of the juror. It appears, too, that, though Mr. Roberts and the juror were

well acquainted with each other, they had never before discussed this case, and that neither of them was acquainted with either the defendant or the deceased, or had any personal interest whatever in the case. Mr. Roberts' interpretation of the remarks and gestures ·of the juror was therefore an improbable one. We agree with the district judge that the alleged misconduct of the juror ,was not proven.

The verdict and sentence are affirmed.

See dissenting opinion of PROVOSTY, J., 81 South. 739.