No. 308, Misc. RUDOLPH *v.* ALABAMA. Supreme Court
of Alabama. Certiorari denied. *Fred Blanton, Jr.* for
petitioner. *Richmond M. Flowers,* Attorney General of
Alabama, and *Leslie Hall,* Assistant Attorney General, for
respondent.

MR. JUSTICE GOLDBERG, with whom MR. JUSTICE DOUG-
LAS and MR. JUSTICE BRENNAN join, dissenting.

I would grant certiorari in this case and in No. 169,
Misc., *Snider* v. *Cunningham, supra,* to consider whether
the Eighth and Fourteenth Amendments to the United
States Constitution permit the imposition of the death
penalty on a convicted rapist who has neither taken nor
endangered human life.

The following questions, *inter alia,* seem relevant and
worthy of argument and consideration:

(1) In light of the trend both in this country and
throughout the world against punishing rape by death,[1]

---

[1] The United Nations recently conducted a survey on the laws,
regulations and practices relating to capital punishment throughout
the world. In addition to the United States, 65 countries and terri-
tories responded. All but five—Nationalist China, Northern Rho-
desia, Nyasaland, Republic of South Africa, and the United States—
reported that their laws no longer permit the imposition of the death
penalty for rape.

The following of the United States reported that their laws no
longer permit the imposition of the death penalty for rape: Alaska,
Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Idaho,

does the imposition of the death penalty by those States which retain it for rape violate "evolving standards of decency that mark the progress of [our] maturing society," [2] or "standards of decency more or less universally accepted"? [3]

---

Illinois, Indiana, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Utah, Vermont, Washington, Wisconsin and Wyoming. The laws of the remaining States permit the imposition of the death penalty for rape, but some States do not, in fact, impose it. United Nations, Capital Punishment (prepared by Mr. Marc Ancel, Justice of the French Supreme Court) (N. Y. 1962) 38, 71–75. See Resolution 934 (xxxv), adopted by the United Nations Economic and Social Council (April 9, 1963).

[2] *Trop* v. *Dulles,* 356 U. S. 86, 101 (opinion of WARREN, C. J., joined by JUSTICES BLACK, DOUGLAS, and WHITTAKER).

[3] *Francis* v. *Resweber,* 329 U. S. 459, 469 (Frankfurter, J., concurring). See *Weems* v. *United States,* 217 U. S. 349, 373:

"Legislation, both statutory and constitutional, is enacted, it is true, from an experience of evils, but its general language should not, therefore, be necessarily confined to the form that evil had theretofore taken. Time works changes, brings into existence new conditions and purposes. Therefore a principle to be vital must be capable of wider application than the mischief which gave it birth. This is peculiarly true of constitutions. They are not ephemeral enactments, designed to meet passing occasions. They are, to use the words of Chief Justice Marshall, 'designed to approach immortality as nearly as human institutions can approach it.' The future is their care and provision for events of good and bad tendencies of which no prophecy can be made. In the application of a constitution, therefore, our contemplation cannot be only of what has been but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality."

Also see *Ex parte Wilson,* 114 U. S. 417, 427–428:

"What punishments shall be considered as infamous may be affected by the changes of public opinion from one age to another. In former

(2) Is the taking of human life to protect a value other than human life consistent with the constitutional proscription against "punishments which by their excessive . . . severity are greatly disproportioned to the offenses charged"? [4]

(3) Can the permissible aims of punishment (*e. g.,* deterrence, isolation, rehabilitation) [5] be achieved as effectively by punishing rape less severely than by death (*e. g.,* by life imprisonment); [6] if so, does the imposition of the death penalty for rape constitute "unnecessary cruelty"? [7]

---

times, being put in the stocks was not considered as necessarily infamous. . . . But at the present day [it] might be thought an infamous punishment."

[4] *Weems* v. *United States,* 217 U. S. 349, 371, quoting from the dissenting opinion of Field, J., in *O'Neil* v. *Vermont,* 144 U. S. 323, 339–340. Cf. *Lambert* v. *California,* 355 U. S. 225, 231 (dissenting opinion of Frankfurter, J.).

[5] See, *e. g., Williams* v. *New York,* 337 U. S. 241; *Trop* v. *Dulles,* 356 U. S. 86, 111 (concurring opinion of BRENNAN, J.); *Blyew* v. *United States,* 13 Wall. 581, 600.

[6] The United Nations Report on Capital Punishment noted: "In Canada, rape ceased to be punishable with death in 1954: it is reported that there were 37 convictions for rape in 1950, 44 in 1953 and only 27 in 1954, the year of abolition; from 1957 to 1959 a steady decrease in convictions was noted (from 56 to 44), while in the same period the population of Canada increased by 27 per cent." United Nations, Capital Punishment, *supra,* note 1, at 54–55.

Such statistics must of course be regarded with caution. See, *e. g.,* Royal Commission Report on Capital Punishment (1953), p. 24; Hart, Murder and Its Punishment, 52 Nw. U. L. Rev. 433, 457 (1957); Allen, Review, 10 Stan. L. Rev. 595, 600 (1958). In Canada, for example, the death sentence was rarely imposed for rape even prior to its formal abolition in 1954. In 1961 there was a slight increase in the number of convictions for rape. See United Nations, Capital Punishment, *supra,* note 1, at 55.

[7] *Weems* v. *United States,* 217 U. S. 349, 370. See *Robinson* v. *California,* 370 U. S. 660, 677 (concurring opinion of DOUGLAS, J.).