270 So.2d 489

**STATE of Louisiana**

**v.**

**Donald JONES and Ronald Jones.**

**No. 51651.**

June 29, 1972.

Dissenting Opinion July 6, 1972.

On Rehearing Dec. 20, 1972.

Wayne Douglas Mancuso, Greenberg, Cohen & Dallam, Nathan Greenberg, Gretna, for defendants-appellants.

William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Spec. Asst. Atty. Gen., Harry H. Howard, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Gordon K. Konrad, Asst. Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice:

Donald Jones appeals from his conviction of aggravated rape, LSA–R.S. 14:42 and his sentence to life imprisonment in the Louisiana State Penitentiary; Ronald Jones appeals from his conviction of aggravated rape, LSA–R.S. 14:42 [1] and his sentence to death by electrocution. Thirteen bills of exceptions were reserved during the proceedings; they are presented for our consideration.

The instant rapes were committed on one victim. The State charged that the defendants, twin brothers, each committed rape, one offense immediately following the commission of the other. Separate indictments charging aggravated rape were filed by the Jefferson Parish Grand Jury against each defendant; the prosecutions, however, were consolidated for trial. Each defendant had and still has separate coun-

---

1. "Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:

"(1) Where the female resists the act to the utmost, but her resistance is overcome by force.

"(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

"(3) Where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense.

"Whoever commits the crime of aggravated rape shall be punished by death." LSA–R.S. 14:42.

·sel, and herein, in brief, counsel for Ronald Jones states:

"All bills of exception concerning alleged errors committed during the course of the trial were reserved in behalf of both defendants regardless of what counsel made the objection and reserved the bill and all issues raised in behalf of one defendant were urged for the other defendant.

"Mr. Nathan Greenberg, designated attorney for Donald Jones has previously submitted a brief in behalf of the defendant, Donald Jones, and said brief has been answered by the State.

"The present brief is being presented in behalf of the defendant, Ronald Jones.

"Because all issues and objections were urged in behalf of both defendants, counsel for Ronald Jones is adopting the brief submitted in behalf of Donald Jones by Mr. Greenberg, and is attaching hereto, making a part hereof a copy of said brief and also, submitting an additional brief in behalf of Ronald Jones urging further written argument in his behalf with regard to the death sentence imposed and the composition of the Grand Jury that indicted the defendants and the Petit Jury that convicted them.

"The first eleven bills of exceptions and the argument thereto as enunciated in the brief by Mr. Greenberg in behalf of Donald Jones are incorporated herein in their entirety and presented in behalf of the defendant, Ronald Jones.

"Additional argument will be added to supplement Bills of Exceptions No. 10 and 11 and written argument will be submitted for Bills of Exceptions No. 12 and 13 regarding the denial of the post trial motion to set aside the verdict on the ground of the illegal composition of the Grand and Petit Juries.

"Because Bill of Exception No. 10 deals with capital punishment and Bill of Exception No. 11 concerns itself with the denial of a motion for a new trial, one of the grounds being various aspects of capital punishment and its application in the instant matter. Separate arguments on each would overlap in many areas. Therefore, in order to avoid unnecessary duplication and to handle the matter in a more orderly fashion, arguments froms Bills of Exceptions Nos. 10 and 11 will be combined."

## BILL OF EXCEPTIONS NO. 1

Bill of Exceptions No. 1 was reserved when the trial judge overruled defendants' motion for a mis-trial and their motion to set aside the selection of the jury.

The prosecuting witness was present in the courtroom during the selection of the jury; counsel for defendants aver that she was sitting directly in front of the per-

sons being selected, and that she appeared to be crying and/or wiping her eyes. They contend that the trial judge committed prejudicial error by not granting their motion for a mis-trial, and that defendants were prejudiced by the actions of the prosecuting witness.

In denying the motion for a mis-trial, the trial judge stated: "I find nothing in the Code of Criminal Procedure or Article 770 which refers to mandatory mistrials or Article 775 which refers to mistrials in the discretion of the Court which warrants the maintaining of the motion. I deny it." His per curiam to the instant bill recites in part: "While the record reflects defense counsel's motion, the jury had been empaneled without objection. Further, there was no demonstration or outburst noticeable to the Court which would have identified the victim or in any way influenced the jurors examined or empaneled."

"* * * The constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding, starting with arrest and culminating with a trial 'in a courtroom presided over by a judge.' Rideau v.

Louisiana, 373 U.S. 723, 727, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663. There can be no doubt that they embrace the fundamental conception of a fair trial, and that they exclude influence or domination by either a hostile or friendly mob. * * *" Cox v. State of Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). However, the misconduct of a spectator, in open court, during the progress of a murder trial, furnishes no ground for the discharge of the jury, unles it be of such a nature as to have necessarily influenced the verdict of conviction. State v. Wimby, 119 La. 139, 43 So. 984 (1907). Cf. State v. Chinn, 229 La. 984, 87 So.2d 315.

We do not find that the defendants were prejudiced by the conduct of the victim. There is no testimony attached to the reserved bills to the effect that there was any demonstration on the part of the victim, or that she gave vent to a vocal emotional outburst. We conclude that there was no need for discharging the jury; the trial judge maintained the integrity of the instant prosecution, and defendants suffered no violation of their constitutional rights. See, Arts. 770 and 775, LSA–C.Cr.P.; State v. Williamson, 145 La. 9, 81 So. 737.[2]

---

2. "The second bill of exception was reserved to an outburst of grief on the part of the widow of the man whom the defendant had killed. While a witness was identifying the clothing worn by the deceased at the time of the homicide, the widow, with an infant on her lap, sitting immediately in front of the jury, caused an interruption of the trial by giving vent to her emotions and crying aloud in court. The attorneys for defendant objected and protested that her display of grief was calculated to arouse sympathy for the widow and child and create prejudice against the defendant in the mind of the jury. It is recited in the bill of exception that the judge promptly heeded the protest of the attorneys for defendant, had the sher-

Bill of Exceptions No. 1 is without merit.

## BILL OF EXCEPTIONS NO. 2

█ Bill of Exceptions No. 2 was allegedly reserved when the trial judge over the objection of defense counsel permitted Mrs. Juanita Ancarrow, a neighbor of the victim at the time of the commission of the instant offense, to testify as follows:

"Q. Now, at that time—how long did Mrs. Gallo and you talk, approximately, in the back—on your back porch?

"A. Oh, approximately fifteen, twenty minutes.

"Q. And during that time, did you see or hear anything which may have been unusual?

"A. I thought I glanced someone walk across Mrs. Gallo's driveway.

"MR. MANCUSO:

"Wait. I'm going to object, Your Honor. I'd like a clarification. Did she or did she not see someone.

"THE COURT:

"You heard the objection to the question and it is quite proper.

"Did you or did you not?

"THE WITNESS:

"I thought I had a glimpse of someone, that's all.

"MR. MANCUSO:

"Your Honor, I'm going to object once again. I would like—did she see someone or did she not see someone. I think that's a simple question.

"MR. MAMOULIDES:

"Q. Did you see anyone you could recognize?

"A. No, sir.

"Q. Is there any question that you saw what was a person?

"A. No, sir. I couldn't say.

"Q. Did you see more than one?

"A. Person? No, sir.

"Q. Now, when you say you saw this person near Mrs. Gallo's—

"MR. MANCUSO:

"Wait, I'm going to object again, Your Honor. I'm not certain in my mind if Mrs. Ancarrow saw anybody. That's why I wanted the point clarified.

iff take the woman out of the courtroom, and instructed the jury to pay no attention to her display of grief and not allow it to influence them in any manner whatever. It appears, therefore, that all that the defendant's attorneys requested was done to avoid any harmful effect of the widow's outburst of grief, and we cannot presume that the jury did not obey the

judge's instruction. The attorneys did not ask that the jury be discharged and a mistrial entered in the case, and we do not think the defendant would have been entitled to that relief if it had been demanded. The occurrence complained of is not a cause for setting aside the verdict." State v. Williamson, 81 So. at p. 738.

"MR. MAMOULIDES:

"I think she answered that, Your Honor.

"THE COURT:

"She said she saw someone, I believe, didn't she?

"MR. MAMOULIDES:

"Q. Is your backyard or your back porch facing the Gallo residence?

"A. No, sir; it doesn't.

"Q. Do you have a clear view of her driveway, Mrs. Gallo's driveway?

"A. If I'm turned at an angle, yes.

"Q. And this was after—

"MR. MANCUSO:

"Your Honor—that's—I'm going to object. That's the beginning of a leading question.

"MR. MAMOULIDES:

"Q. Was this before or after your children had been picked up by the bus?

"A. After.

"Q. How long after this did Mrs. Gallo leave your presence?

"A. Well fifteen or twenty minutes; I'm not positive.

"Q. How long after you saw this person?

"A. Oh, probably ten minutes."

In later testimony, Mrs. Ancarrow testified that after the above transpired, she left her porch to put out her trash. (With respect to time, this was after the commission of the alleged rapes.) She saw two boys standing in the driveway; she also saw the victim and two of her children standing in their yard. Mrs. Ancarrow stated that she would not recognize the boys if she saw them again.

At the time of reserving this alleged bill, counsel for the defendants argued that since Mrs. Ancarrow could not identify either of the defendants, the testimony objected to was prejudicial, speculative, and not entitled to any weight.

Herein, counsel submit that the above testimony by itself was not corroborative of anything, and was so speculative and conjectural that it should not have been admitted. They argue: "This witness was unable to say who the person was and admitted that she saw no one that she could recognize. The inference from her testimony, of course, is that someone was going across the driveway before Mrs. Gallo returned to her home, and that someone must have been one of the defendants. The testimony standing alone does not prove anything; however, the testimony in the light of Mrs. Gallo's testimony creates the inference that one of the defendants was walking across Mrs. Gallo's driveway, and that one of the defendants therefore laid in wait for her in her house before she returned to her home. The inference in the light of the lack of knowledge of the

witness is entirely too speculative and conjectural to even be admissible; nevertheless the testimony was admitted over objection. The testimony does not relate to any of the defendants except by inference, and its admissibility could only serve to create a prejudicial inference insofar as these defendants were concerned."

The State submits that although defense counsel objected to the above testimony, they did not reserve a formal bill of exceptions; it is contended that defense counsel should not now complain. City of Baton Rouge v. Van Valkenburg, 259 La. 23, 249 So.2d 189; LSA–C.Cr.P. Art. 841.

The trial court felt that defense counsel had reserved a bill because it wrote a per curiam thereto. It stated in part: "The testimony attached to the bill shows that whatever apparent conflict there was between her answers was clearly before the jury. The jury's resolution, if any were needed, of the issue was clearly within their province as trier of fact. In any event, the Court can see no prejudice to the defendant."

Accepting the fact that a bill was reserved, we find that the bill has no merit. Both defendants testified during trial and admitted that they were present on the victim's premises on the day of the commission of the alleged crimes. Under such circumstances, defendants could not have suffered prejudice by the admission in evidence of Mrs. Ancarrow's testimony supra.

Bill of Exceptions No. 2 is without merit.

## BILL OF EXCEPTIONS NO. 3

Bill of Exceptions No. 3 was reserved when the trial court would not permit Anna Lewis, a defense witness and maid for Mrs. Constance C. Coogan, a neighbor of the victim, to use a diagram, previously entered in evidence, to reorient herself and facilitate her testimony with respect to the position of the car in which the defendants were riding on the day of the commission of the instant offense.

Counsel for the defendants submit that the failure of the trial court to permit the witness to testify from the diagram constituted prejudicial error.

We find no merit in this bill and adopt the following per curiam of the trial judge as our reasons for such finding:

"This bill was reserved when a defense witness, Mrs. Anna Lewis, was denied permission to use, in connection with her testimony, a diagram drawn by the prosecuting witness. The ostensible purpose of the requested use of the diagram was that she might orient herself as to the position of the defendant's car with relation to the front of the house. The denial of the use of the diagram for this purpose could in no way have prejudiced the defendant, there

having remained numerous other ways in which she might have oriented herself, if indeed such orientation was necessary. Indeed, the witness had previously testified that she could not remember the direction in which the car was pointing, and it is extremely difficult to see how such a diagram could help her. No request was made that she be allowed to draw her own diagram."

Bill of Exceptions No. 3 is without merit.

## BILL OF EXCEPTIONS NO. 4

■ Bill of Exceptions No. 4 was reserved when the trial judge, June 23, 1970, refused to continue the present trial until the next morning.

The following colloquy transpired with respect to the reservation of the instant bill:

"MR. GREENBERG:

"Your Honor, please, we had planned to call three character witnesses and we were just informed that our other two left. So, we are sorry. We are sort of caught short here with reference to three character witnesses. I believe that the only other witnesses that we would have to put on would be the Defendants and I'm sure that their testimony will be quite lengthy.

"THE COURT:

"It doesn't make any difference. I've got a long night ahead of me no matter what happens, Mr. Greenberg. Let's proceed. We are going to proceed with this case.

"MR. MANCUSO:

"Your Honor, in behalf of the Defendant Ronald Jones, I would move that the matter be continued into tomorrow. It's now 7:00 o'clock. We have been here all day. This is the crux of the Defense's case. We know that each of them will be on the stand at least approximately an hour apiece and there is no telling how long they will be subject to cross examination.

"THE COURT:

"That's all speculative. Let's find out. Let's get started.

"MR. MANCUSO:

"I don't know how Mr. Greenberg and the State feels right now, and I'm somewhat tired and I don't feel that I'm at my best at this particular moment and I would like to have the opportunity, since this is such a grave matter, to at least be at my best on direct examination. I don't think I could be as competent as I would like to be under these circumstances, after sitting in here all day in Court. If we will be here at least another three or four hours, if the Defendants have to take the stand, I respectfully request the Court continue this matter so we can start bright and early in the morning, and when everyone is fresh.

"MR. MAMOULIDES:

"I object.

"THE COURT:

"I deny the motion to continue the matter."

Herein, counsel for the defendants submit:

"Bill of Exceptions No. 4 was taken to the failure of the Court to allow a continuance of the matter at 7:00 o'clock p. m., when defendants were having trouble having their witnesses appear to testify, and the Court insisted upon proceeding with the trial. The Court ruled that the trial should continue, notwithstanding request by defense counsel for a continuance, and declined to continue the case to the following morning. Although we are aware of the decision of State v. Skinner, 251 La. 300, 204 So.2d 370 (1967), which at first blush may appear to be against the position advocated by the defense, we respectfully submit that the circumstances herein warranted a continuance for the reason that counsel for defendants were having difficulty getting their witnesses to court, and at that time of night, the entire side of the case from a defense standpoint had to be put on, as well as the argument. No harm would have been done by continuing the matter to the following day. All parties concerned including the jury had to return the following morning anyway for the purpose of rendition of the verdict, and the continuance from 7:00 o'clock p. m., that night to 9:00 or 10:00 a. m., on the following morning may well have constituted the difference between defendants being found guilty or not guilty herein."

An application for a continuance shall be by written motion, LSA–C.Cr.P., Art. 707; the instant motion was not in writing, but under the circumstances as presented supra, defense counsel undoubtedly must have felt that their verbal motion would suffice since it was in the nature of a motion for a recess.

"A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor. LSA–C.Cr.P., Art. 712. The granting or refusing of a continuance in a criminal case rests in the sound discretion of the trial judge, and his ruling will not be disturbed except where his discretion has been arbitrarily or unreasonably abused. State v. Skinner, 251 La. 300, 204 So.2d 370; State v. Jones, 249 La. 324, 186 So.2d 608. Cf. State v. Lewis, 255 La. 623, 232 So.2d 294." State v. Richardson, 258 La. 62, 245 So.2d 357 (1971).

We have read the defendants' testimony which was adduced near the end of trial. It is lengthy and asserts their innocence; they admitted to having relations with the prosecuting witness but averred that no rape was committed; they testified in detail with respect to her averred consent. Nowhere in defendants' testimony is there

any reflection of fatigue or undue prolongation of trial.

Counsel for the defendants did not falter in presenting the defendants' testimony; they were alert and competent in their questioning. They did not show the materiality of the testimony of the absent character witnesses, but their representation of the defendants was capable and efficient.

Under the circumstances presented in this bill, we conclude that the refusal of the trial judge to grant a continuance or a recess was neither arbitrary nor unreasonable. He states in his per curiam:

"This bill was reserved under the following circumstances. At approximately 9:00 p. m. counsel for defendants arrived at the point in their case where it became necessary to place the defendants on the stand, the latter having agreed to testify on behalf of themselves. Defense counsel sought a recess until the morrow on the grounds that the expected direct and cross-examination would be lengthy and that defense counsel would be more alert in the morning. As pointed out by the Court in its ruling at the time, any projection as to the length of time the defendants would be on the stand was in the realm of speculation. Even if it can be said that by the nature of things one loses a certain amount of mental alertness toward the end of a considerably rigorous day, it does not follow that such loss, if any, would be substantial to the degree necessary to preju-

dice the cause of a defendant. The Court knows of no constitutional mandate which directs the recess of a criminal trial upon the complaint of a defense attorney's being 'somewhat tired'. The Court, saw, and sees, no merit to the bill. State v. Skinner, 251 La. 300, 204 So.2d 370."

Bill of Exceptions No. 4 is without merit.

## BILL OF EXCEPTIONS NO. 5

Bill of Exceptions No. 5 was reserved when the trial court refused to permit the utilization of defendant Donald Jones' entire testimony given to the Grand Jury prior to trial, in evidence.

On cross examination, Donald Jones testified that he and his brother left the prosecuting witness' house and walked to his car; he said that the hood of the car remained raised while he was in the house and before entering the car, he put the hood down. The District Attorney then asked Donald if he remembered testifying before the Grand Jury, and he said that he did. The District Attorney stated to the trial court that the State intended to use the Grand Jury testimony where it was in direct conflict with the testimony of the witness. Defense counsel then urged that the entire Grand Jury testimony, which had been given to them prior to trial, be offered in evidence. During colloquy, the District Attorney stated: "I intend to use, at this time, one portion, on page 63, con-

cerning the hood of the automobile. When it was up and when it was down and when he put it down to show the inconsistent statements." The trial court said that it thought that the offering was premature, and defense counsel stated: "I'm not denying that he has a right to impeachment. All I'm saying is that he is going to try to use isolated parts to impeach him, I'd like the whole thing in." The court ruled that defense counsel could use any part of the Grand Jury testimony to rehabilitate the witness, and it would rule in defense counsel's favor, and it was willing to go through the whole thing. Impeachment was permitted, and the following testimony was adduced:

"Q. Now Mr. Jones, you testified on direct testimony that you voluntarily appeared before the Grand Jury and testified, is that correct?

"A. Yes, sir.

"Q. At that time you had advice of Counsel? You knew you didn't have to testify, is that correct?

"A. Yes, sir.

"Q. Do you remember the date that this testimony was given?

"A. No, sir.

"Q. If I told you it was October 4th, 1969, would that refresh your memory at all?

"A. Yes, sir.

"Q. Would that be about right?

"A. Yes, about that. It was about that time, I think.

"Q. I'm going to refer you to page 163 [63] of the transcript of the Grand Jury testimony in which one of the jurors of the Grand Jury asked you the question:

"QUESTION: 'Before you went in the house, did you lower the hood on your car?'

"And, your answer was:

" 'Yes.'

"The next question was:

" 'You did?'

"ANSWER: 'Yes.'

"Q. Now, I ask you again, a few minutes ago you testified that you left the hood up for the entire time and you were sure of that. Do you wish to change that testimony now? You were under oath, when you testified before the Grand Jury?

"A. Yes, I was. I can't remember word for word what I said.

"Q. At this time, you testified in the Grand Jury in October, 1969, it was less than two months after your arrest, is that correct?

"A. Yes, sir."

Herein, counsel for the defendant submit:

"Your Honors will note that the State used isolated portions of the Grand Jury

testimony. The defense interposed by both of these defendants herein was consent of the prosecutrix. Both defendants appeared and testified before the Grand Jury and in essence, confessed to the alleged crime, although the said confession contained the defense of consent alleged by both defendants. We respectfully submit that the entire Grand Jury testimony should have been made available to the jury herein for the reason that the utilization of isolated portions of the testimony, considering the nature of the testimony by the defendants, was to deny the defense the provisions of L.S.A.-R.S. 15:450, which provides:

" 'Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.'

"Your Honors will note that the State herein sought to utilize a certain portion or portions of the testimony of the defendants before the Grand Jury against the defendants. Whether these statements be deemed to be a confession, admission or declaration which the State seeks to use against the defendants, according to the statute, the defendants are entitled to the benefit of the provisions of the statute, which relate to the benefit of any exculpation or explanation that the whole statement may afford. We respectfully submit that the statute in question was designed to cover this situation, where a portion of the defendants' statement or statements is used, and where the defendants have been denied the right to use those portions of their statements which have reference to exculpatory remarks. We respectfully submit that the failure to permit the utilization of the entire testimony before the Grand Jury was therefore prejudicial and violative of the provisions of LSA-R.S. 15:450."

We find that the defendants suffered no prejudice by the trial court's ruling. Only a small part of the Grand Jury testimony was used for the purpose of impeachment. Defense counsel could have employed any part of the Grand Jury testimony he desired to use. No partiality was shown to the State. The following per curiam of the trial judge reflects that no reversible error was committed:

"This bill was reserved when the District Attorney announced his intention to use certain portions of the testimony of one of the defendants given to the Grand Jury voluntarily to impeach his testimony given at the trial. Reference to the transcript in connection with the bill will fairly show that the District Attorney was permitted by the Court to A) immediately attempt impeachment after laying the proper foundation, as to asserted inconsistencies between his testimony of the trial and that recorded at page 63 of his Grand Jury testimony concerning the 'hood of the auto-

mobile' ; and B) attempt further impeach-ment, in the event it was warranted, and after laying a proper foundation, on the basis of any other seeming inconsistencies which might develop between his testimony on cross-examination and his testimony previously given to the Grand Jury. The basis of the objection was not (A) that all declarations of the defendant made in the Grand Jury Chamber relevant and germane to the purportedly conflicting statements given at the trial should be used, but rather it was (B) that his entire testimony before the Grand Jury should be admitted into evidence. The Court therefore overruled the objection."

Bill of Exceptions No. 5 is without merit.

## BILL OF EXCEPTIONS NO. 6

■ Bill of Exceptions No. 6 was reserved when the trial judge overruled defense counsel's objection to the following allegedly repetitious question propounded to defendant Donald Jones on cross-examination:

"Now, you testified earlier that after you left the house you brought Ronald home and you ran some other errands? What other errands did you run?"

Defense counsel contends that overruling their objection to the above question was prejudicial to the defendants.

We find that the defendants suffered no prejudice by the trial court's ruling and adopt its per curiam; which follows, as our reasons:

"The objection was that the question was repetitious, and the objection was overruled. Perhaps as phrased the question did call for a response which was to some extent necessarily redundant and repetitious, but the very phrasing of the question indicates that its purpose was to elicit new and additional information. If the question were phrased without the perspicacity, precision, and acuteness ideally to be contemplated, that ideal is seldom consistently obtained in any trial. In any event, the question was certainly within the realm of proper cross-examination, and the defendants were not prejudiced."

Bill of Exceptions No. 6 is without merit.

## BILLS OF EXCEPTIONS NOS. 7 AND 8

Bill of Exceptions No. 7 was reserved when the trial court overruled defense counsel's objection to the following question propounded to the defendant Ronald Jones on cross-examination:

"Did your brother Donald Jones work there too?"

Defense counsel contended that the information sought was not relevant evidence. Herein, defense counsel states: "It

would appear that LSA–R.S. 15:280 [3] would preclude this bill. However, for purposes of the record, we respectfully reurge this bill."

Bill of Exceptions No. 8 was reserved when the trial court overruled defense counsel's objection to the following question propounded to the defendant Ronald Jones on cross-examination:

"What time did you have to get to work?"

Defense counsel contended that the information sought was not relevant and had not been brought out on direct examination. Herein, defense counsel states: "It would appear that LSA–R.S. 15:280 would preclude this bill. However, for purposes of the record, we respectfully reurge this bill."

■ During trial both defendants took the witness stand and testified in their own behalf. Under such circumstances, they were subject to cross-examination upon the whole case. State v. Giles, 253 La. 533, 218 So.2d 585 (1969).

■ The trial court committed no reversible error in overruling defense counsel's objections to the above questions. The evidence sought was relevant and admissible.

3. "When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case." LSA–R.S. 15:280

Bills of Exceptions Nos. 7 and 8 are without merit.

BILL OF EXCEPTIONS NO. 9

■ Bill of Exceptions No. 9 was reserved when the trial judge refused to grant a continuance just prior to the argument of the State, approximately 12:00 midnight, June 23, 1970.

The circumstances under which this bill was reserved were as follows:

"THE COURT:

"We have reached a point in the trial, gentlemen, where the next matter on the agenda is the argument of the State, then the Defendants and then the State and any rebuttal it wishes to make.

"You gentlemen wish a short recess before you begin your argument or are you ready?"

"MR. MANCUSO:

"No, Your Honor, I'm going to move right for a continuance to come back in the morning prior to closing argument. We have had two very full days of trial with the witnesses and we have facts and notes scattered all over here. It is going to take, in order to present a logical [argu-

LSA–R.S. 15:462 provides: "When a person accused, or a husband or wife becomes a witness, such witness shall be subject to all the rules that apply to other witnesses, and may be cross-examined . . . upon the whole case."

ment] to the jury, it will take some time to accumulate these notes and put the information together. I would like a continuance until 9:00 o'clock tomorrow morning so we might prepare a closing argument."

Our reasons for finding no merit to Bill of Exceptions No. 4 applies to the instant bill. As stated supra, defense counsel ably and competently represented the defendants, and we find that they suffered no prejudice by the late hour during which the instant trial was conducted.

Bill of Exceptions No. 9 is without merit.

## BILL OF EXCEPTIONS NO. 10

■■■ Bill of Exceptions No. 10 was reserved to the trial court's charge to the jury as to responsive verdicts for aggravated rape; it was directed to the court's instruction as to the death penalty, defense counsel contending that the death penalty was cruel and unusual punishment within the intendment of the United States Constitution.

Herein defense counsel submit: " * * One of the verdicts which is responsive to the charge is guilty as charged in which case the penalty will be death by electrocution. Objection was made on the grounds that the charge constituted cruel and unusual punishment, was violative of the due process clause of the United States Constitution, and the charge was objected to. The Court indicated that 'it's a good bill,

sooner or later,' but overruled the objection to the charge. * * *

"It has been held that the death sentence is now considered an excessive penalty for relatively unaggravated rape. See Ralph v. Warden, 438 F.2d 786 (4th Cir., 1970) decided by the U. S. Court of Appeals, Fourth Circuit, which similarly holds that execution is a cruel and unusual punishment for all but the most aggravated types of rape. See also Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155 [11 L.Ed.2d 119] (1963). Testimony of the coroner herein clearly showed that the prosecutrix herein was not injured by either of the defendants, notwithstanding her tale of the alleged knife supposedly utilized by the other defendant herein, but which was never found either at the scene or upon the person of either of the defendants. We respectfully submit that the conduct of the defendants herein warrants a conclusion that the prosecutrix was not the subject of any beating, laceration, cuts, bruises, etc; therefore, this was not one of the most aggravated types of rape."

At the present time, there is no Louisiana State Supreme Court case or a decision by the United States Supreme Court to support defense counsel's contentions.

In the case of State v. Crook, 253 La. 961, 221 So.2d 473 (1969), this Court stated: "The motion to quash also attacks the constitutionality of the death sentence for aggravated rape. In this State, the mode of

administering the death penalty is electrocution.

"About twenty states authorize a death sentence for rape. See Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (Footnote 1). The Louisiana Legislature has authorized the death penalty for aggravated rape. LSA–R.S. 14:42. The jury, however, may return a qualified verdict, and if it does so, the sentence must be life imprisonment. LSA–C.Cr.P. Art. 817.

"Since the Legislature is vested with the constitutional power to define crimes and fix punishments, this Court is concerned only with the constitutionality of the death penalty for aggravated rape. More specifically, we must determine whether the death penalty for such a crime is prescribed by the Eighth and Fourteenth Amendments of the United States Constitution.

"The Eighth Amendment provides:

" 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'

"Cruel and unusual punishments are those that are barbarous extraordinary, or grossly disproportionate to the offense. In short, the constitutional prohibition is directed to punishments that shock the conscience of civilized men.

"Electrocution is a common method of administering the death penalty. Introduced as an improvement over the older and less humane methods of execution, such as hanging, its constitutionality has been consistently upheld. In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519; State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422; State v. Burdette, 135 W.Va. 312, 63 S.E.2d 69.

"Aggravated rape is a grave offense. The authorization of capital punishment for rape, as we have observed, is not unusual in the United States. Such punishment is neither bizarre nor extraordinary. Nor do we appraise it as grossly disproportionate to the crime. As late as 1963, in denying certiorari, the Supreme Court of the United States declined to consider whether the Eighth and Fourteenth Amendments prohibited the imposition of the death sentence on a convicted rapist who had neither taken nor endangered life. See Rudolph v. Alabama, supra. Recently, in State ex rel. Barksdale v. Dees, 252 La. 434, 211 So.2d 318, we held the death penalty was not a cruel and unusual punishment for aggravated rape. * * *" See State v. Cripps, 259 La. 403, 250 So.2d 382.

The United States Supreme Court made the following statement in the case of McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971): "In light of history, experience, and the present limitations of human knowledge, we find it quite impossible to say that committing to the untrammeled discretion of the jury the power

to pronounce life or death in capital cases is offensive to anything in the Constitution.[18] The States are entitled to assume that jurors confronted with the truly awesome responsibility of decreeing death for a fellow human will act with due regard for the consequences of their decision and will consider a variety of factors, many of which will have been suggested by the evidence or by the arguments of defense counsel. For a court to attempt to catalog the appropriate factors in this elusive area could inhibit rather than expand the scope of consideration, for no list of circumstances would ever be really complete. The infinite variety of cases and facets to each case would make general standards either meaningless 'boiler-plate' or a statement of the obvious that no jury would need."

Donald Jones did not receive the death penalty, but it was assessed against Ronald Jones, and herein he contends that a split verdict is discriminatory. He argues:

"That the defendant, Ronald Jones, suffered the ultimate discrimination in that he along with another principal was convicted of the same crime, yet he was sentenced to death and the other defendant life. The unequal application of the law in this particular case has to be unequaled in its unconstitutionality and its degree of cruel and unusual punishment.

"The sentence of death imposed upon the petitioner was determined by a jury which, pursuant to the laws of the State of Louisi-ana, has unlimited, undirected and unreviewable discretion in determining whether the death penalty shall be imposed. No legal, fair or uniform standards for making this determination are set forth by statute, Judicial decision, administrative or executive pronouncement. Thus, the capital sentencing system established under Louisiana laws permits juries to utilize illegal and unconstitutional factors in sentencing persons to death, and results in the imposition of the death penalty arbitrarily and capriciously, in violation of the equal protection of the laws and the rule of law that is the fundamental principle of the due process clause of the Fourteenth Amendment to the Constitution of the United States. To sentence one individual to death for committing a particular crime and another individual for committing the same crime at a different time and place to life would certainly be an unequal application of the law and would be in violation of due process of law. But to have two defendants commit the same crime upon the same victim, and to have one sentenced to death and the other to life is such an unequal application of the law, that it challenges the minds of fair men.

"Petitioner was denied his constitutional rights under the eighth and fourteenth amendments to the Constitution of the United States in that the sentence of death under Louisiana law constitutes a cruel and unusual punishment.

"Juries are authorized by Louisiana law to impose a death sentence wantonly, whimsically, and without standards. Such a punishment is cruel because it is arbitrary and irrational. The sentence of death is unusual since its imposition is in no way controlled or limited to circumstances which may reasonably be believed to justify such a sentence.

"Louisiana is constitutionally obligated to provide procedure whereby the particularizing circumstances which might justify imposition of the death penalty or clearly define and focused upon and given considered attention by the sentencing authority.

"The death penalty is rarely, arbitrarily and inequitably applied in Louisiana for the crime of rape. If applied regularly and even-handedly to punish the crime of rape, it would violate public standards of decency, dignity and humanity universally shared, that would brand it as barbarous. It thus avoids public condemnation only by being unusually and arbitrarily applied. In this, it is a cruel and unusual punishment within the Eighth Amendment.

"If the degree of aggravation is not material for conviction and not defined, why should the penalty be more severe for one individual and not the other, when that degree of aggravation necessary for the commission of the crime has been reached by both individuals. Under such circumstances, a more severe penalty for one individual would not be equal application of the law and therefore, contrary to the principle of due process and equal protection of the law as annunciated in the Constitution.

"Capital punishment is per se cruel and unusual punishment and in violation of the Eighth Amendment to the Constitution of the United States and Article 1, Section 12, of the Constitution of the State of Louisiana."

At the present time, there is no authority to support defendant Ronald Jones' contentions. This Court, as stated supra, has consistently rejected contentions that the death penalty for aggravated rape constitutes cruel and unusual punishment where the victim's life was neither taken nor endangered. State v. Myers, 261 La. 100, 259 So.2d 27 (1972). The jury saw the defendants, observed their demeanor, and heard their testimony on direct and cross-examination. The jury also heard the testimony of the prosecuting witness as well as that of many other witnesses. Its verdict was that Ronald Jones should suffer death and Donald Jones should serve life imprisonment. Also as stated supra, this was the province of the jury; its prerogative was to determine guilt and punishment. See State v. Myers, supra. Myers v. Henderson, Warden of Louisiana State Penitentiary, 262 La. 179, 262 So.2d 784, writ refused June 13, 1972. Ronald Jones suffered no

·violation of his constitutional rights; the trial judge committed no reversible error.

Bill of Exceptions No. 10 is without merit.

## BILL OF EXCEPTIONS NO. 11

Bill of Exceptions No. 11 was reserved when the trial court denied defense counsel's motions for a new trial.

 As we view the motions for a new trial, they are based chiefly on the ground that the verdicts are contrary to the law and the evidence, which averments, of course, under our law present nothing for review.

The trial judge in his per curiam to the instant bill stated: "The Court is of the opinion that the motion for a new trial on the various grounds asserted therein is without merit. Necessarily, some of the grounds have been discussed in connection with the other bills, reserved during the trial. The grounds presented for the first time in the motion do not warrant a new trial under the application of Article 851 C.Cr.P." [4]

 This Court is without authority to review the evidence of guilt. State v. Ford, 259 La. 1037, 254 So.2d 457 (1971); State v. Jones, 251 La. 431, 204 So.2d 775 (1967); Art. VII, Sec. 10, La.Const. of 1921.

Counsel for the defendants do not show that the averred newly discovered evidence if it had been presented at trial would probably have changed the verdict of the jury. Under the facts and circumstances existing under this bill, we do not find that the trial judge committed reversible error in denying defense counsel's motion for a new trial.

Bill of Exceptions No. 11 is without merit.

---

4. "The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

"The court, on motion of the defendant, shall grant a new trial whenever:

"(1) The verdict is contrary to the law and the evidence; ·

"(2) A bill of exceptions reserved during the proceedings shows prejudicial error;

"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by· the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;

"(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or

"(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a· matter of strict legal right." Art. 851, LSA–C.Cr.P.

BILLS OF EXCEPTIONS NOS. 12 AND 13

█ Bills of Exceptions Nos. 12 and 13 were reserved when the trial court denied defense counsel motions to set aside the verdicts because the Grand Jury which indicted defendants and the petit jury which tried defendants were unconstitutionally formulated.

Herein defense counsel contend:

"Defendant's [Ronald Jones] final contention of constitutional violations concerns itself with the under representation of Negros on the Grand and Petit Juries that were involved in the indictment and conviction of the defendants, Donald and Ronald Jones.

"It is a constitutional imperative that the Grand Jury must be a body truly representative of the community. Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 165 [85 L.Ed. 84], Brooks v. Beto, 5th Cir. (1966) 366 F.2d 1, 11.

"At the time the defendants were indicted and tried, the Parish of Jefferson had a population of approximately 337,568 of which 12.8 percent were Negros. U. S. Department of Commerce, Bureau of the Census, 1970.

"Despite the percentage of Negros comprised in the population of the Parish of Jefferson, no Negros were on the Petit Jury that convicted the defendants and the Petit Jury Venire did not comprise sufficient number of Negros equal to the percentage represented in the General population of the Parish of Jefferson. Nor was there sufficient proportion of Negros on the Grand Jury Venire and the Actual Grand Jury that was responsible for the indictment of the defendants. * * * The defendants hope to prove not only their contention of under representation of Negros on the Grand and Petit Juries involved in their particular, but to show a trend for the Parish of Jefferson in the selection of Grand and Petit Juries Venires indicate that there has always been an under representation in that those Negros who were submitted for the Grand and Petit Jury Venires were done so in the manner that constituted tokanism and systematic exclusion.

" * * *

"In the very recent case of Alexander v. La., [404 U.S. 813] 92 S.Ct. 114, [30 L.Ed. 2d 43], the United States Supreme Court reversed the rape conviction of a Negro defendant on the grounds that the system used in selecting the Grand Jury and the Grand Jury itself did not lend itself to proper representation with regards to percentage of population, of Negros, on the Grand Jury.

"It is therefore submitted that the indictment against the defendants is invalid be-

cause it was returned by a Grand Jury impaneled from a venire made up contrary to the requirements of the equal protection clause and the due process clause of the Fourteenth Amendment."

In Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), the U. S. Supreme Court stated that although a defendant has no right to demand that members of his race be included on the grand jury which indicts him, he is entitled to require that the State not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice. The Court also stated that once a prima facie case of invidious discrimination is established, the burden of proof shifts to the State to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedures have produced the monochromatic result.

We do not find that defense counsel made out a prima facie case of invidious discrimination; their contentions are not supported by sufficient evidence; the burden of proof under the facts and circumstances did not shift to the State. The presumption therefore remains that the Grand Jury which indicted defendants and the petit jury which tried them were constitutionally formulated.

Bills of Exceptions Nos. 12 and 13 are without merit.

For the reasons assigned, the convictions and sentences are affirmed.

TATE, J., concurs in the opinion, except that he concurs in the result only as to Bills 5, 12 and 13.

BARHAM, J., dissents and assigns reasons.

BARHAM, Justice (dissenting).

I dissent from the affirmation of the verdicts and sentences because I believe there is reversible error in the trial proceedings. Moreover, I dissent from the sentence imposed on the defendant Ronald Jones, being of the opinion that the case falls squarely within the views expressed in all five of the concurring opinions forming a majority in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See also Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972). These cases would require our setting aside the sentence of Ronald Jones and remanding to the trial court for sentence in conformity with their holding. This procedure we have utilized in cases where the death sentence (though not the conviction) was invalid under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and it would be equally applicable here. See State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971); State v. Duplessis, 260 La. 644, 257 So.2d 135 (1971).

ON REHEARING

PER CURIAM

The defendants were convicted of aggravated rape, La.R.S. 14:42. Defendant Donald Jones was found guilty without capital punishment and was sentenced to life imprisonment at the Louisiana State Penitentiary. However, defendant Ronald Jones was found guilty without any recommendation of mercy by the jury. Accordingly, he was given the death sentence.

We affirmed the convictions (see the original opinion) but granted a rehearing with respect to appellant Ronald Jones to determine the validity of the death sentence imposed.

After this appeal was taken, the United States Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which holds that the imposition of the death penalty under statutes similar to Louisiana's constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Accordingly, we remand this case to the 24th Judicial District Court with instructions to the judge to sentence the defendant, Ronald Jones, to life imprisonment. State v. Franklin, 263 La. 344, 268 So.2d 249.

Case remanded.